## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 26 2017, 8:11 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Abraham Murphy
Abraham Murphy Attorney at Law, LLC
Indianapolis, Indiana

ATTORNEY FOR APPELLEE
JAMES E. CHALFANT

Jennifer L. Graham
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Michael Fish,

*Appellant-Plaintiff,*

v.

2444 Acquisitions, LLC; El Sol Also Rises, Inc.; El Sol De Tala, Inc.; Viva Management Services, Inc.; Quality Leasing Company; Ruben Pazmino; Javier Amezcua; and James E. Chalfant,[1]

September 26, 2017

Court of Appeals Case No. 49A02-1702-MF-213

Appeal from the Marion Superior Court

The Honorable Michael D. Keele, Judge

Trial Court Cause No. 49D07-1103-MF-10806

---

[1] Although the instant appeal only concerns Appellant-Plaintiff Michael Fish's claims that relate to Appellee-Defendant James E. Chalfant, we nonetheless include all of the parties included in Fish's original complaint in this caption because a party below is a party on appeal. *See* Appellate Rule 17(A) (providing that "[a] party of record in the trial court … shall be a party on appeal").

*Appellees-Defendants.*

**Bradford, Judge.**

# Case Summary

In August of 2007, Appellant-Plaintiff Michael Fish executed a Secured Promissory Note with 2444 Acquisitions, LLC ("the 2007 Note"). Under the terms of the 2007 Note, Fish agreed to loan 2444 Acquisitions the sum of $220,000.00 and 2444 Acquisitions agreed to repay the loan in a single lump sum payment on or before September 14, 2017. Appellee-Defendant James E. Chalfant personally guaranteed repayment of the 2007 Note. In November of 2008, Fish executed a second Secured Promissory Note with 2444 Acquisitions ("the 2008 Note"). Under the terms of the 2008 Note, Fish agreed to lend 2444 Acquisitions the sum of $220,976.68, with interest. The terms of the 2008 Note indicated that the loan was to be repaid by monthly installments over a term of approximately three years with a final balloon payment due on December 1, 2011.

[2] Fish subsequently alleged that 2444 Acquisitions failed to repay the funds associated with the 2008 Note according to the Note's terms. In filing the underlying lawsuit, Fish claimed that Chalfant's guaranty of the 2007 Note also applies to the 2008 Note. The trial court found otherwise, and granted summary judgment in favor of Chalfant. Because we agree with the trial court, we affirm.

## Facts and Procedural History

[3] In August of 2007, Chalfant, on behalf of and in his position as a Managing Member of 2444 Acquisitions, executed the 2007 Note with Fish. Pursuant to the terms of the 2007 Note, Fish agreed to lend 2444 Acquisitions the sum of $220,000.00. Also pursuant to the terms of the 2007 Note, 2444 Acquisitions agreed to pay back the $220,000.00 in a single lump sum payment "on or before September 14, 2007." Appellant's App. Vol. II, p. 36. The terms of the 2007 Note did not include any express conditions as to interest.

[4] On August 3, 2007, Chalfant signed a Guaranty of Payment ("the Guaranty") in which he personally guaranteed "the full and prompt payment to [Fish] of that certain Secured Promissory Note of Two Hundred Twenty Thousand Dollars, made by [2444 Acquisitions] in favor of [Fish]." Appellant's App. Vol. II, p. 39. The terms of the Guaranty indicated that it "shall remain in full force and effect until any and all indebtedness due [Fish] has been fully paid." Appellant's App. Vol. II, p. 36. The terms of the Guaranty also indicated that it

was to be "construed according to the law of the State of Indiana." Appellant's App. Vol. II, p. 40.

[5] On November 25, 2008, Chalfant, again on behalf of and in his position as a Managing Member of 2444 Acquisitions, executed the 2008 Note with Fish. Pursuant to the terms of the 2008 Note, Fish agreed to lend 2444 Acquisitions the sum of $220,976.68, "with interest at the rate of 12.2314 percent per annum." Appellant's App. Vol. II, p. 58. The loan was to be repaid

> in equal monthly installment[s] of $3,200.00 commencing on December 1, 2008 and continuing thereafter until November 1, 2011. A balloon payment of the then outstanding principal shall be due on December 1, 2011, less a credit equal to the difference between the interest that has accrued under this Note and the amount of interest that would have accrued if interest is calculated at the rate of 10 percent per annum.

Appellant's App. Vol. II, p. 58. Chalfant did not execute a new Guaranty at the time the 2008 Note was executed.

[6] On March 18, 2011, Fish filed a complaint in the trial court, alleging a number of counts against a number of parties. With regard to Chalfant, Fish alleged that Chalfant breached his Guaranty because his Guaranty extended to cover the funds loaned to 2444 Acquisitions in connection to the 2008 Note. On August 23, 2016, Fish filed a motion for summary judgment which related only to his claim against Chalfant. On November 16, 2016, Chalfant filed a cross-motion for summary judgment. Fish responded to Chalfant's motion on December 12, 2016.

The trial court conducted a hearing on the parties' competing summary judgment motions on December 14, 2016. At the conclusion of the hearing, the trial court took the matter under advisement. On January 3, 2017, the trial court issued an order granting summary judgment in favor of Chalfant. This appeal follows.

# Discussion and Decision

Fish contends that the trial court erred in granting summary judgment in favor of Chalfant. We disagree.

# I. Standard of Review

Pursuant to Rule 56(C) of the Indiana Rules of Trial Procedure, summary judgment is appropriate when there are no genuine issues of material fact and when the moving party is entitled to judgment as a matter of law. *Heritage Dev. of Ind., Inc. v. Opportunity Options, Inc.*, 773 N.E.2d 881, 887 (Ind. Ct. App. 2002).

> "On appeal from the denial of a motion for summary judgment, we apply the same standard applicable in the trial court. Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). We therefore must determine whether the record reveals a genuine issue of material fact and whether the trial court correctly applied the law. A genuine issue of material fact exists where facts concerning an issue, which would dispose of the litigation are in dispute, or where the undisputed material facts are capable of supporting conflicting inferences on such an issue. If the material

facts are not in dispute, our review is limited to determining whether the trial court correctly applied the law to the undisputed facts. When there are no disputed facts with regard to a motion for summary judgment and the question presented is a pure question of law, we review the matter de novo."

*Clary v. Lite Machines Corp.*, 850 N.E.2d 423, 430 (Ind. Ct. App. 2006) (quoting

*Bd. of Tr. of Ball State Univ. v. Strain*, 771 N.E.2d 78, 81-82 (Ind. Ct. App. 2002)

(internal quotation marks and some citations omitted)).

A party seeking summary judgment bears the burden to make a *prima facie* showing that there are no genuine issues of material fact and that the party is entitled to judgment as a matter of law. *American Management, Inc. v. MIF Realty, L.P.*, 666 N.E.2d 424, 428 (Ind. Ct. App. 1996). Once the moving party satisfies this burden through evidence designated to the trial court pursuant to Trial Rule 56, the non-moving party may not rest on its pleadings, but must designate specific facts demonstrating the existence of a genuine issue for trial. *Id.*

*Heritage Dev.*, 773 N.E.2d at 888 (emphasis added). "On appeal, the trial court's order granting or denying a motion for summary judgment is cloaked with a presumption of validity." *Van Kirk v. Miller*, 869 N.E.2d 534, 540 (Ind. Ct. App. 2007), *trans. denied*. However, we are not limited to reviewing the trial court's reasons for granting or denying summary judgment but rather may affirm the trial court's ruling if it is sustainable on any theory found in the evidence designated to the trial court. *See Alva Elec., Inc. v. Evansville-*

*Vanderburgh Sch. Corp.*, 7 N.E.3d 263, 267 (Ind. 2014) (citing *Wagner v. Yates*, 912 N.E.2d 805, 811 (Ind. 2009)).

[10] Further, "[t]he fact that the parties made cross motions for summary judgment does not alter our standard of review. *MacGill v. Reid*, 850 N.E.2d 926, 928-29 (Ind. Ct. App. 2006) (citing *Hartford Acc. & Indem. Co. v. Dana Corp.*, 690 N.E.2d 285, 291 (Ind. Ct. App. 1997), *trans. denied*). "When considering cross motions for summary judgment, we consider each motion separately, construing the facts most favorably to the non-moving party in each instance and determine whether the moving party is entitled to judgment as a matter of law." *Id*. at 929 (citing *Hartford*, 690 N.E.2d at 291).

## II.  Overview of Law Relating to a Guaranty

[11] In *S-Mart, Inc. v. Sweetwater Coffee Co., Ltd.*, 744 N.E.2d 580 (Ind. Ct. App. 2001), we set forth a detailed recitation of the law relating to a guaranty.  In doing so, we stated the following:

> A guaranty is defined as "a promise to answer for the debt, default, or miscarriage of another person." 38 AM. JUR. 2d *Guaranty* § 1 (1999).  It "is an agreement collateral to the debt itself" and represents a "conditional promise" whereby the guarantor promises to pay only if the principal debtor fails to pay. *Id*.  Under Indiana law, three parties are required to execute a guaranty agreement: the obligor or principal debtor, the obligee or creditor, and the guarantor or surety.  [*Kordick v. Merchants Nat'l Bank & Trust Co. of Indpls.*, 496 N.E.2d 119, 124 (Ind. Ct. App. 1986)].  A continuing guaranty is defined as a guaranty that:

"contemplates a future course of dealing encompassing a series of transactions.... [A] contract is continuing if it contemplates a future course of dealing during an indefinite period, or if it is intended to cover a series of transactions or succession of credits, or if its purpose is to give to the principal debtor a standing credit to be used by him from time to time. A continuing guaranty covers all transactions, including those arising in the future, which are within the contemplation of the agreement."

38 AM. JUR. 2d *Guaranty* § 20 (1999) (emphasis added); see also *Vidimos, Inc. v. Vidimos*, 456 N.E.2d 455, 458 (Ind. Ct. App. 1983) ("continuing guaranty is not limited to single transaction, but contemplates a future course of dealing encompassing a series of transactions"). Moreover, a continuing guaranty "is not limited in time or amount and is operative until revoked." 49 AM. JUR. 2d *Landlord and Tenant* § 819 (1995).

The rules governing the interpretation and construction of contracts generally apply to the interpretation and construction of a guaranty contract. [*Kordick*, 496 N.E.2d at 123]. The extent of a guarantor's liability is determined by the terms of his or her contract. *Id*. The terms of a guaranty should neither be so narrowly interpreted as to frustrate the obvious intent of the parties, nor so loosely interpreted as to relieve the guarantor of a liability fairly within its terms. *Id*. The contract of a guarantor is to be construed based upon the intent of the parties, which is ascertained from the instrument itself read in light of the surrounding circumstances. *Skrypek v. St. Joseph Valley Bank*, 469 N.E.2d 774, 776 (Ind. Ct. App. 1984); *Orange-Co., Inc. v. Brown*, 181 Ind. App. 536, 393 N.E.2d 192, 195 (1979).

A guarantor's liability will not be extended by implication beyond the terms of his or her contract. *Goeke v. Merchants Nat'l Bank & Trust Co. of Indianapolis*, 467 N.E.2d 760, 765 (Ind. Ct.

App. 1984), *trans. denied* (1985). "A guarantor is a favorite in the law and is not bound beyond the strict terms of the engagement. Moreover, a guaranty of a particular debt does not extend to other indebtedness not within the manifest intention of the parties." *Id*.

Under Indiana common-law principles, when parties cause a material alteration of an underlying obligation without the consent of the guarantor, the guarantor is discharged from further liability whether the change is to his or her injury or benefit. *Goeke*, 467 N.E.2d at 765. In *Yin v. Society Nat'l Bank Indiana*, 665 N.E.2d 58, 64 (Ind. Ct. App. 1996), *trans. denied* (1997), the court summarized the following rules relating to material alteration of a guaranty:

> "'Guarantors and sureties are exonerated if the creditor by any act, done without their consent, alters the obligation of the principal in any respect or impairs or suspends the remedy for its enforcement.' *Farmers Loan & Trust Co. v. Letsinger*, 652 N.E.2d 63, 66 [(Ind. 1995)] (quoting *Weed Sewing Machine Co. v. Winchel*, 107 Ind. 260, 7 N.E. 881 (1886)); *see also* 2 WHITE & SUMMERS, § 16-10 at 106 ('The law has traditionally held that conduct by the creditor which increases the surety's risk discharges the surety or reduces the surety's obligation pro rata.'). Moreover, when the principal and obligee cause a material alteration of the underlying obligation without the consent of the guarantor, the guarantor is discharged from further liability. *Cunningham v. Mid State Bank*, 544 N.E.2d 530, 534 (Ind. Ct. App. 1989), *reh. denied, trans. denied*; *Merchants Nat'l Bank and Trust Co. v. Lewark*, 503 N.E.2d 415, 416 (Ind. Ct. App. 1987), *reh. denied, trans. denied*. A material alteration which will effect a discharge of the guarantor must be a change which alters the legal identity of the principal's contract, substantially increases the risk of

loss to the guarantor, or places the guarantor in a
different position. *Cunningham*, 544 N.E.2d at 534.
The change must be binding. *Houin v. Bremen State
Bank*, 495 N.E.2d 753, 759 (Ind. Ct. App. 1986)."

Furthermore, 49 AM. JUR. 2d *Landlord and Tenant* § 822 (1995)
(emphasis added) states that:

"A material alteration or departure from the contract
of guaranty of a lease, without the guarantor's
consent, will discharge the guarantor, whether or not
the guarantor is prejudiced thereby. *The guarantor and
the surety have a right to stand upon the terms of the
contract, and if they do not assent to any variation of it, and
a material variation is made, it is fatal to recovery against
them. This rule is fully applicable to sureties on leases.*

A material alteration of a lease within the meaning of
such rule occurs where an agreement is made
between the lessor and lessee changing the terms of
the lease, or the time for the payment or rent, or in
some cases the amount of the rent payable."

*S-Mart*, 744 N.E.2d at 585-86 (emphasis in original).

# III.  Analysis

In *Keesling v. T.E.K. Partners, LLC*, 861 N.E.2d 1246, 1253 (Ind. Ct. App. 2007),
the trial court found that a second note, which was executed without the notice

and consent of one of the accommodation parties[2], "was merely given to evidence the current amount of monies then due and owing under the original note and extend the due date for payment of the original note." (internal record quotation omitted). On review, we concluded otherwise. *Id*. at 1253-55. Specifically, we found that the terms of the second note capitalized interest due on the original note and converted it to principal in the second note. *Id*. at 1253-54. The second note also increased the principal draws beyond the amount that was contemplated by the original note. *Id*. at 1254. By increasing the principal and potential liability beyond that which was original contemplated by the accommodation parties, the second note increased the guarantor's potential liability. As such, we concluded that that the terms of the second note constituted a material alteration of the original obligation. *Id*. at 1254-55.

[13]  Like in *Keesling*, the 2008 Note was not merely an extension of the 2007 Note, but rather constituted a material alteration of the 2007 Note. Pursuant to the terms of the 2007 Note, Fish agreed to lend 2444 Acquisitions the sum of $220,000.00. Also pursuant to the terms of the 2007 Note, 2444 Acquisitions agreed to pay back the $220,000.00 in a single lump sum payment "on or before September 14, 2007." Appellant's App. Vol. II, p. 36. The terms of the 2007 Note did not include any express conditions as to interest. Pursuant to the

---

[2]  An accommodation party is one who signs an instrument "for the purpose of incurring liability on the instrument without being a direct beneficiary of the value given for the instrument[.]" *See* Ind. Code § 26-1-3.1-419.

terms of the 2008 Note, Fish agreed to lend 2444 Acquisitions the sum of $220,976.68, "with interest at the rate of 12.2314 percent per annum." Appellant's App. Vol. II, p. 58. The loan was to be repaid

> "in equal monthly installment[s] of $3,200.00 commencing on December 1, 2008 and continuing thereafter until November 1, 2011. A balloon payment of the then outstanding principal shall be due on December 1, 2011, less a credit equal to the difference between the interest that has accrued under this Note and the amount of interest that would have accrued if interest is calculated at the rate of 10 percent per annum."

Appellant's App. Vol. II, p. 58.

[14] The differences between the terms of the 2007 Note and the 2008 Note increased potential liability by $976.68 plus annual interest in the amount of 12.2314 percent of the outstanding balance of the loan. In addition, not only did the 2008 Note increase the potential liability beyond that which was originally contemplated by Chalfant, it also extended the time period under which he could potentially continue to be liable for 2444 Acquisitions's debt. Under the terms of the 2007 Note, the debt was to be paid in full within approximately one month of the loan. Under the terms of the 2008 Note, the debt was not to be paid in full until December of 2011, or approximately a period of three years. The terms of the 2008 Note constituted a material alteration of the terms of the 2007 Note.

[15] Moreover, to the extent that Fish argues that the guaranty at issue constituted a continuing guaranty, we reiterate that "[a] continuing guarantee encompasses

all transactions, including those arising in the future, that are within the contemplation of the agreement." *S-Mart*, 744 N.E.2d at 587 (citing 38 AM. JUR. 2D *Guaranty* § 20 (1999)). However, nothing in the language of the Guaranty indicates that Chalfant contemplated or agreed for the Guaranty to apply to any future transactions which would extend his potential liability beyond the $220,000 that was memorialized in the Guaranty and the 2007 Note. The Guaranty therefore, should not be read as a continuing guaranty.

[16] For these reasons, we conclude that the trial court did not err in granting summary judgment in favor of Chalfant. As such, we affirm the judgment of the trial court.

[17] The judgment of the trial court is affirmed.

May, J., and Barnes, J., concur.