ATTORNEYS FOR APPELLANTS
Craig D. Doyle
Mark R. Galliher
Kurt V. Laker
Indianapolis, Indiana

ATTORNEY FOR APPELLEE
Sean M. Clapp
Fishers, Indiana

# In the
# Indiana Supreme Court



No. 49S02-0910-CV-442

THOMAS A. NEU, ELIZABETH A. NEU, AND
WELLS FARGO BANK, N.A.,

*Appellants (Defendants and Cross-claimants below),*

v.

BRETT GIBSON,

*Appellee (Plaintiff below).*

Appeal from the Marion Superior Court, No. 49D10-0506-MF-21457
The Honorable David Dreyer, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 49A02-0811-CV-1031

**June 1, 2010**

**Shepard, Chief Justice.**

Brett Gibson sold his business to John Nowak. Nowak financed his purchase in part with a note secured by a second mortgage on Nowak's residence. Nowak subsequently sold his residence to Thomas and Elizabeth Neu, who did not know of Gibson's mortgage. When Nowak defaulted, Gibson foreclosed. During an earlier appeal, the Court of Appeals determined that the

Neus and their lender were entitled to priority ahead of Gibson, the same position held by Nowak's first mortgagee.

Now, the Neus claim this entitles them to interest, attorney fees, and costs. They also assert that they may foreclose on their own home under terms of the Nowak mortgage or, in the alternative, that they have a right to force a sheriff's sale of the property based on Gibson's foreclosure. The trial court found they were not entitled to any of these. Because we conclude that the trial court reached the equitable resolution of the case and that the applicable statute does not require the court to grant the Neus a sale, we affirm.

**Facts and Procedural History**

Brett Gibson sold his company, Cellular Telephone Centers, T.H., Inc., to John Nowak. To finance the purchase, Nowak executed a promissory note to Gibson for $350,000 secured by a mortgage on Nowak's home. The pertinent documents provided for a 6.5% interest rate, for foreclosure in case of default, and for attorney fees and costs in case Gibson needed to sue to enforce his rights. Gibson also agreed to release the mortgage when Nowak sold the house "provided that [Nowak] has not defaulted in his obligations to the mortgagor and is current in his payments." (App. at 41.)

At the time Nowak purchased the business, Irwin Mortgage Corporation held a prior mortgage on his home securing a loan of $506,900. The Irwin mortgage provided for a 6.25% interest rate. It also stated that Irwin would be "entitled to collect all expenses incurred in pursuing [acceleration], including, but not limited to, reasonable attorneys' fees and costs of title evidence." (App. at 235.) It defined default as follows:

> Borrower shall be in default if any action or proceeding,
> whether civil or criminal, is begun that, in Lender's judgment,

2

could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. . . . The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

(App. at 231–32.)

On March 11, 2005, Nowak sold his home to Thomas and Elizabeth Neu for $600,000. He did not inform Gibson of the sale, and as part of his closing with the Neus he signed a Vendor's Affidavit stating the real estate was free and clear of "every kind or description of lien, lease or encumbrance except" a "mortgage from John L. Nowak, a single man[,] to Irwin Mortgage Corporation . . . ." (App. at 66, 89, 96.)

Investors Titlecorp acted as the closing agent for the transaction and performed a title search on the real estate. The search revealed the Irwin mortgage but not the Gibson mortgage.

The Neus brought $395,391.06 to closing and borrowed $200,000.00 from Washington Mutual Bank. Of the purchase price, $506,016.34 went to satisfy the Irwin mortgage. Nowak received $54,679.82 at closing.

At the time he sold the property, Nowak was $500 short of being current on his $7,000 monthly obligation to Gibson. In May and June 2005 he made only half payments.

On June 3, 2005, Gibson sued Nowak, the Neus, and Washington Mutual on Nowak's promissory note and sought to foreclose on the real estate. He asked for $366,148.93 plus 6.5% interest as well as attorney fees and costs. The Neus cross-claimed against Nowak for breach of the warranty deed he executed in their favor. On October 14, 2005, Nowak filed for bankruptcy.

Gibson and the Neus filed competing motions for summary judgment. The court granted the Neus' motion for summary judgment and required Gibson to release his mortgage, finding Nowak had substantially complied with its conditions. The court also found that "though other findings dispose of this litigation between Gibson and the Neus and Washington Mutual," the Neus and Washington Mutual "would be entitled to assume the first lien position of Irwin Mortgage Corporation, in the amount of $506,016.34, under the doctrine of equitable subrogation." (App. at 184.) Similarly, the court denied Gibson's motion for summary judgment seeking foreclosure.

Gibson appealed, arguing the trial court erred by ordering him to release his mortgage and by finding that equitable subrogation applied to the Neus' mortgage. Gibson v. Neu, 867 N.E.2d 188 (Ind. Ct. App. 2007). The Court of Appeals reversed the trial court's determination that the Gibson mortgage required Gibson to release the mortgage because Nowak had defaulted by being behind in his payments. Id. at 194–96. It also reversed the denial of Gibson's summary judgment motion requesting foreclosure. Id. at 197. The Court of Appeals affirmed the determination on equitable subrogation. Id. at 201.

Following the Court of Appeals decision, Washington Mutual assigned its interest to Wells Fargo Bank, N.A., and the trial court substituted the parties. The Neus and Wells Fargo ("the Neus") moved the court to determine the amount of their lien as including the $506,000 payoff of the Irwin mortgage plus interest at the 6.25% rate for which it provided. Because Gibson has not exercised his right to a sheriff's sale in the presently depressed real estate market, they also moved to foreclose on the real estate under color of the Irwin mortgage and for a sheriff's sale at which they would receive a credit in the amount of their lien.

On November 21, 2007, the court first entered a judgment of foreclosure against the property in favor of Gibson in the amount of $380,438.57 plus interest at the statutory rate, attorney fees, and costs. It then found the Neus' lien totaled $506,016.34 and had priority over

Gibson's. Finally, it denied the Neus' request for a sheriff's sale because "there is no authority for the court to allow a foreclosure sale when there is no foreclosure." App. at 14. It did not otherwise address the Neus' request that their lien be foreclosed as an in rem judgment or their request for interest, fees, and costs.

On December 20, 2007, the Neus moved alternatively to amend the order or to correct errors. In particular, they requested the court to allow them to force a sheriff's sale or to clarify that the order was not a final, appealable order and that they were permitted to file a foreclosure claim. On March 24, 2008, the court confirmed that its previous order was not final and that they were not precluded from filing for foreclosure.

The Neus sought and received leave to file a counterclaim and cross-claim for foreclosure. They claimed that Nowak had defaulted under the Irwin mortgage, to which they were the subrogees. They asked the court to declare their lien as first, enter judgment against Nowak, foreclose their mortgage, and direct a sale.

The Nues subsequently moved for summary judgment on these claims. Gibson filed a cross-motion for summary judgment arguing the court could not order foreclosure because the Neus were not in default. The court denied the Nues' motion and granted Gibson's on October 22, 2008.

Upon the Neus' request, the court declared to be final its orders on the two summary judgment motions as well as the motion to determine lien amount and sell real estate.

The Neus appealed. The Court of Appeals affirmed the trial court's denial of attorney fees and interest but reversed its denial of a sheriff's sale. Neu v. Gibson, 905 N.E.2d 465 (Ind. Ct. App. 2009). We granted transfer. Neu v. Gibson, 919 N.E.2d 555 (Ind. 2009) (table).

5

**Standard of Review**

We review a summary judgment order <u>de novo</u>. <u>Kovach v. Caligor Midwest</u>, 913 N.E.2d 193 (Ind. 2009). That is, we will affirm where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law based only on the facts supported by designated evidence. Ind. Trial Rule 56 (C).[1]

**I.    The Scope of Equitable Subrogation—Foreclosure, Interest, and Attorney Fees**

The nature of equitable subrogation is, as its name indicates, equity. The doctrine substitutes one who fully performs the obligation of another, secured by a mortgage, for "the owner of the obligation and the mortgage to the extent necessary to prevent unjust enrichment." Restatement (Third) of Property § 7.6(a) (1997); <u>see</u> <u>Bank of New York v. Nally</u>, 820 N.E.2d 644, 653 (Ind. 2005). This avoids an inequitable application of the general principle that priority in time gives a lien priority in right. <u>See</u> <u>Jones v. Rhoads</u>, 74 Ind. 510, 513 (1881). In considering whether to order subrogation and thus bypass the general principle of priority, courts base their decisions on the equities, particularly the avoidance of windfalls and the absence of any prejudice to the interests of junior lienholders. <u>Nally</u>, 820 N.E.2d at 653.

As noted above, during the earlier stages of this litigation, the trial court ordered that the Neus and their lender be subrogated to the extent of the Irwin mortgage, and the Court of

---

[1] As a matter preliminary to the merits, Gibson contends that the Neus' claims on the amount of their lien and their right to seek a sheriff's sale are barred by untimeliness, preclusion under law of the case, and waiver. (Appellee's Br. at 10–17.) The Court of Appeals held that the Neus' contentions were available on appeal. We summarily affirm this determination. Ind. Appellate Rule 58(A).

Appeals affirmed. There is no request to reconsider that determination, so we proceed by accepting it as the law of the case.

Moving forward from that earlier determination about priority, the Neus assert that their status as equitable subrogees to the Irwin mortgage necessarily entitles them to foreclosure, interest, and attorney fees. Generally, they maintain that Irwin would be entitled to these remedies and that they are entitled to all of Irwin's rights under the previous mortgage. (Appellants' Br. at 6.)

The Neus point to Nally for the proposition that "a party entitled to equitable subrogation obtains all rights and remedies available to the prior lender." (Appellants' Br. at 7–8.) Nally involved a couple who purchased a home financed with two mortgages, one of these with a bank and the other with the sellers. 820 N.E.2d at 647. Although the sellers' mortgage expressly stated it was subordinate to the bank's, it was recorded before the bank's mortgage and the deed. Id. The husband, now single, subsequently refinanced with a second bank, which assigned the mortgage to Bank of New York. Id. Bank of New York did not have actual knowledge of the sellers' mortgage, relying on its assignor's title insurance instead of conducting a title search. Id. When the bank sought to foreclose its mortgage, the sellers intervened and asserted priority. Id.

After concluding that the bank had at least constructive notice, we held that it stood in the shoes of the original bank's mortgage and therefore had priority over the sellers, but only to the extent the refinancing proceeds were used to pay off the first lien. Id. at 651–52, 654. This avoided prejudice to the sellers as junior lienholders. Id. at 654.

The lending bank in Nally paid off the original lender, and then some (adding enough so the homeowner could pay off a few other debts). We declared that permitting the new lender subrogation to the position of the original lender (at least to the extent the new loan paid off the old one) was equitable because that lender "expects to receive the same security as the loan being

7

paid off." Id. at 653.  Moreover, the junior lienholder is not typically disadvantaged by a transaction like the one in Nally, where the first position was essentially swapped between one lender and another.

Nowhere in Nally did we state that equitable subrogation always entitles every subrogee to all of the rights its subrogor possessed.  On the contrary, we emphasized that "[t]he key to subrogation is an equitable result."  Id. at 655.  Nor did we maintain that every party entitled to equitable subrogation is entitled to all of the rights the bank held.  As the maxim goes, equity supplies what equity demands.  We thus consider each right the Neus assert in turn.

**A.  Foreclosure.**  As noted above, the Irwin mortgage included terms stating that Nowak would be in default if any action begins that might result in a material impairment of Irwin's interest.  The Neus assert that Gibson's action endangers their interest in the property.  They have also declared Nowak in default and given him notice, and thus claim that they have the right to foreclose on their home under the terms of the Irwin mortgage.

The Neus seek to obtain foreclosure on their own home in order to force a sheriff's sale.  At that sale, they hope to bid successfully for the property, using their lien amount as credit, or at least to recover the lien amount.  They argue that by denying foreclosure the court denied them "the right, universally enjoyed by mortgage holders, to 'credit bid' up to the amount of their judgment," without which they are "at the mercy of third party bidders" who could successfully bid a minimal amount the Neus would have to accept. (Appellants' Br. at 9–10.)

Equitable subrogation does not resurrect every clause for the Neus to enforce.  Nowak's obligations under the Irwin mortgage ended when the Neus satisfied the Irwin debt and the mortgage was discharged.  Therefore, the "Borrower" to whom the mortgage refers no longer has any responsibility under that document.  No party can possibly foreclose under the terms of the

8

Irwin mortgage any longer. On the other hand, Nowak still has obligations under the Gibson mortgage and under the representations he made to the Neus at closing.

It is not clear why the Neus' position would be so disadvantageous should Gibson request a sheriff's sale. Their lien would still have the first priority, and a sheriff's sale would not change that. Nothing precludes them from bidding the amount of that lien against other bidders.

**B. Interest.** The Neus next argue they are entitled to interest at the rate provided for in the Irwin mortgage because "a party obtaining a lien through equitable subrogation is unquestionably entitled to interest." (Appellants' Br. at 11.) They argue that <u>Nally</u> supports this because in that case we held that the bank was entitled to interest up to the maximum rate provided for in the subrogated mortgage. (<u>Id.</u> (citing 820 N.E.2d at 654).) They also cite a handful of cases from other states in which the subrogee was entitled to interest, such as <u>Harper v. Ely</u>, 70 Ill. 581 (1873). (Appellants' Br. at 11–12.) Additionally, we note that in <u>Braden v. Graves</u>, 85 Ind. 92 (1882), we held that the subrogee was entitled to interest at the rate of the liens he purchased.

<u>Braden</u> involved determining the rights of the landowner and a lienholder. <u>Id.</u> at 92. Braden, the landowner, had acquired the deed by paying off two judgment liens against the sellers. <u>Id.</u> at 92–93. Prior to his purchase but after the judgments were entered, the sellers had executed a mortgage to Graves. <u>Id.</u> at 92. When one of the sellers died, Graves sued to foreclose. <u>Id.</u> at 93. Braden maintained that he did not have actual or constructive knowledge of the Graves mortgage because it was not properly recorded. <u>Id.</u> at 96. After determining that Braden was subrogated to the two liens he purchased, this Court reversed the trial court's ruling and held that Braden was entitled to interest based on the rates provided by each respective lien. <u>Id.</u> Interest at these rates was therefore added to Braden's prior lien at the sale of the land at stake. <u>Id.</u> at 98.

In Harper the current owner, Ely, had bought the property and the mortgage after the original owner's mortgagee and caretaker had allowed the property to lose rental income to force the mortgagor into default. Harper v. Ely, 56 Ill. 179, 185 (1870). The mortgagee foreclosed and sent his nephew to the foreclosure sale to buy the property and the debt. Id. at 191–92. The court determined the sale was a "sham." Id. 56 Ill. at 191–93, 196. In the meantime, the owner had sold the property to Harper. Id. at 184. After concluding that Ely was the subrogee to the original mortgagee but should have known the questionable nature of his title, the court required him to surrender the land. Harper, 70 Ill. at 582–83. Harper could not take the property, however, until he paid off a lien in Ely's favor that included rents earned, liens discharged, taxes, insurance costs, and, notably, interest at the rate provided by the subrogated liens. Id. at 582–83, 585–86.

Both these cases and Nally appear to be representative. See Annotation, Scope and extent of subrogation in favor of one entitled to be subrogated to mortgage lien, 107 A.L.R. 785, 787–90 (1937).

As seems apparent from these recitations, however, there are multiple factual differences between each of the three foregoing cases and the one before us now. And in a court of equity, differences in fact do matter in deciding the outcome. To take the most recent of the three, Nally, it mattered that the new mortgagee had more or less swapped places with the original lender during what we characterized as a "conventional refinancing" in which it was appropriate that the new lender "receive the same security as the loan being paid off." Nally, 820 N.E.2d at 653. In the present case, the Neus and their lender have shaped a rather different set of relationships. The new lender, whose loan reflected only a fraction of the loan paid off at closure, stands in a wholly satisfactory position as a result of the trial court's earlier decision that it and the Neus stand ahead of Gibson in order of priority. Wells Fargo will presumably receive the interest its predecessor bargained for, and it stands fairly secure from market risks relating to real estate value. The Neus positioned themselves to be rather different from the lender they

helped pay off at closing. They were not simply swappers of debt; they were people who anticipated exposing themselves to both market risk and market reward. Their present dilemma flows from their reliance on the services and insurance arranged by Investors Titlecorp. The trial court's earlier ruling giving them priority ahead of Gibson seems like a substantial step of equity that largely rescued them from the calamity that might have otherwise befallen them (namely, ending up in line behind Gibson).

All in all, the question is whether the trial court worked an inequitable result when it declined to go beyond its earlier order on priority by awarding interest to Wells Fargo and the Neus (to the further disadvantage of the now-junior, innocent lienholder Gibson). We conclude that the court acted equitably.

**C. Attorney Fees.** The Neus also argue that they are entitled to attorney fees and costs. (Appellants' Br. at 13.) The Irwin mortgage calls for Nowak to pay for the expenses Irwin would have incurred had Nowak defaulted. The Irwin mortgage cannot be said to be in default, so it cannot be the reason they are entitled to fees and costs. Furthermore, the equities weigh against the Neus recovering fees for the same reasons they weigh against them recovering interest. For these reasons, the Neus are not entitled to attorney fees.

## II.   Neus Cannot Force a Sheriff's Sale.

As an alternative to their arguments based on equity, the Neus assert that the code section authorizing a party to force a sheriff's sale of a foreclosed mortgage gives them the power to do so as a party with an interest in the foreclosed property on which Gibson has acted to foreclose. (Appellants' Br. at 14–16.) To their thinking, such a construction would prevent junior lienholders from sitting on their rights to the detriment of the landowners and senior lienholders. The statutory provision they cite is Indiana Code § 32-29-7-3(b) (2008), which states

11

A judgment and decree in a proceeding to foreclose a mortgage that is entered by a court having jurisdiction may be filed with the clerk in any county as provided in IC 33-32-3-2. After the period set forth in subsection (a) expires, <u>a person who may enforce the judgment and decree</u> may file a praecipe with the clerk in any county where the judgment and decree is filed, and the clerk shall promptly issue and certify to the sheriff of that county a copy of the judgment and decree under the seal of the court.

(Emphasis added.)

While the trial court granted enforceable rights to both the Neus and Gibson, it granted only Gibson the ability to force a sale. (App. at 14.) It ordered, "Gibson may, based on his judgment of foreclosure, praecipe for sale of the property to the Sheriff of Marion County, in the manner as provided by law, without relief from valuation and appraisement laws." (App. at 14.) The court's order therefore clearly excludes the Neus from the statute's category of "a person who may enforce the judgment." The Neus claim this renders the order contrary to law. (Appellants' Br. at 15.)

The Neus argue that the General Assembly used the language "a person who may enforce the judgment" to allow all parties with an interest in foreclosed property to force a sheriff's sale. (Appellants' Br. at 14–15.) They point out that this section does not use terms like "the holder of the lien foreclosed" or "the prevailing party," while the section governing recording a satisfaction of a mortgage uses the term "prevailing party." (<u>Id.</u> (citing Ind. Code § 32-30-10-6).) While these observations seem pertinent, the fact remains that the subsection does not define who may enforce the judgment. The statute allows a court to grant the right to enforce the judgment by forcing a sheriff's sale to more than the foreclosure claimant, but it also does not require a court to do so. In this case the trial court's order states how Gibson may enforce the judgment and clearly denies the Neus any ability to do so. (App. at 14.)

12

As for the Neus' comparison with Ind. Code § 32-30-10-6, we recognize that Ind. Code § 32-30-7-3 uses broader language than "prevailing party." This does not mean, however, the Neus are included in its meaning. The subsection's plain language indicates that the General Assembly intended to limit who may record the satisfaction of a foreclosure and to allow courts discretion as to who may force a sheriff's sale, which seems a reasonable approach.

The Neus characterize foreclosure or forcing a sheriff's sale as their only viable options to protect their interests. In fact, they have at least two other remedies. As the homeowners, they could sell their home immediately without a court's action. Out of the proceeds, Wells Fargo would be paid first, then they would receive the remainder of the Irwin mortgage lien, followed by Gibson, if sufficient proceeds remain. (See App. at 14.) There are settings in which this would be an attractive alternative, perhaps not here. Alternatively, they can take the matter up with their title insurance company, which is also the party who failed to find Gibson's lien.[2]

The purchase of real estate inherently includes some risk of an unknown lienholder later asserting its interests. The Neus, like most homebuyers, sought assistance and protection against this risk. Drawing the equitable subrogation line at priority in these circumstances does not unfairly prejudice the Neus and preserves Gibson's rights as an inferior lienholder.

**Conclusion**

We affirm the judgment of the trial court.

---

[2] At oral argument, counsel stated that the Neus have filed a claim with their title insurance company and that the result of that claim depends upon this litigation.

13

Dickson, Sullivan, and Boehm, JJ., concur.
Rucker, J., concurs in result.