

**FILED**
Mar 12 2015, 9:59 am
*Kevin S. Smith*
**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANTS

Richard M. Davis
Kevin G. Kerr
Hoeppner Wagner & Evans LLP
Valparaiso, Indiana

ATTORNEYS FOR APPELLEE

Kevin W. Vanderground
Church, Church, Hittle & Antrim
Merrillville, Indiana

Rick C. Gikas
Merrillville, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| The County of Lake, Indiana; Board of Commissioners of the County of Lake (Indiana), in their official capacities; and The Lake County Treasurer, in his official capacity, | March 12, 2015 |
| | Court of Appeals Case No. 45A03-1401-CC-42 |
| *Appellants-Defendants,* | |
| v. | Appeal from the Lake Superior Court |
| | The Honorable Calvin P. Hawkins, Judge |
| U.S. Research Consultants, Inc., an Indiana Corporation, | Cause No. 45D02-0805-CC-183 |
| *Appellee-Plaintiff.* | |

**Robb, Judge.**

# Case Summary and Issue

U.S. Research Consultants, Inc. ("Consultant") and The County of Lake, Indiana; the Board of Commissioners of the County of Lake, Indiana, in their official capacities; and the Lake County Treasurer, in his official capacity (collectively, the "County"), entered into a series of contracts (the "collection contracts") for Consultant to be paid a commission for collecting delinquent real property taxes on behalf of the County. After the collection contracts were terminated, Consultant sued the County for breach of contract, alleging unpaid commissions under the collection contracts. The trial court granted Consultant's motion for partial summary judgment and denied the County's motion regarding the interpretation of the contract. Based upon that judgment, the trial court later granted final judgment in excess of one million dollars to Consultant on its complaint. The County raises several issues, of which we find the following dispositive: whether the trial court properly interpreted the collection contracts as a matter of law and therefore properly granted partial summary judgment to Consultant and denied partial summary judgment to the County. Concluding the trial court erred as a matter of law in interpreting the collection contracts and erroneously granted partial summary judgment and ultimately final judgment to Consultant, we reverse and remand.

# Facts and Procedural History

In 2000, the County and Consultant entered into a contract by which the County assigned real property tax collection cases to Consultant for collection

and Consultant earned a commission on amounts collected. The initial contract was for a two-year term beginning January 1, 2000, and provided, in pertinent part:

> 2. *Scope of Service.* The Consultant shall do, perform, and carry out in a good and professional manner the services for the County, specifically the Consultant shall:
>
> A. Consultant shall be assigned by the Lake County Treasurer 100% of the Real Property Tax Collection Cases.
>
> B. Consultant shall report directly to the Lake County Treasurer for all instructions if necessary to carry out its responsibilities.
>
> * * *
>
> E. Collect the delinquent monies through an organized procedure to include filing lawsuits to collect if necessary.
>
> * * *
>
> I. All payments made by defendants on lawsuits filed with the Court(s) shall be made to the Clerk of the Court. These funds will then be transferred by the Clerk of the Court to the County of Lake and its Treasurer for deposit as payments are made. Payments will be applied as follows:
>
>> 1. First to the payment of Court costs until these are paid in full.
>>
>> 2. The remaining funds will be split between real property taxes and penalties owed to the County of Lake and [Consultant's] fees on a pro rata basis in accordance with the judgment rendered.
>
> J. To obtain its fees [Consultant] will have to file a claim form with the County of Lake. [Consultant] will be paid out of the monies received from the Clerk.
>
> K. If monies are paid on accounts prior to filing suit, these funds will be paid directly to the Lake County Treasurer who will collect not only taxes, fines and penalties but any [Consultant's] fees. The Treasurer will deposit these funds into separate accounts for taxes, interest, penalties and [Consultant's] fees on a pro rata basis. [Consultant] will

then file a claim with the County of Lake for fees which should be paid from the funds established.

\* \* \*

[Consultant's] fees to be received must be reasonable and will be established by the Court as part of the judicial proceedings or by the Treasurer . . . . Shall not exceed fee following [sic]:

　　1. If suit is filed, [Consultant] will accept the fees awarded by the court as reasonable attorney's fees.

　　2. If suit is not filed, [Consultant's] fee will be twenty percent (20%) of the taxes.

Appellants' Appendix at 26-28. The same contract was renewed for a second term in January 2002. *See id.* at 32-37. On June 4, 2003, the parties entered into a third contract which changed the terms of Consultant's compensation:

　　4. *Compensation.* The County agrees to pay the Consultant a sum not to exceed the following:

　　1. If suit is not filed, Consultant(s) [sic] fee will be fifteen percent (15%) of the taxes for all projects begun on or after the date this Agreement is approved by the County. Consultant's fees for projects begun before this Agreement is approved by the County shall be twenty percent (20%) of the taxes.

　　2. If suit is filed, Consultant(s) [sic] fee will be the amount determined by the Court.

*Id.* at 40. A fourth two-year contract was entered into on January 1, 2005 with these same (altered) compensation terms. The County terminated Consultant's contract in November 2006.[1]

---

[1] The contract included a clause allowing either party to terminate the agreement by giving at least thirty days written notice. *See id.* at 47.

[3] The "organized procedure" for collecting delinquent monies was for the County to periodically send a disc to Consultant containing information about properties with delinquent taxes. However, the taxes were divided into "last year taxes," or taxes delinquent for less than one year, and "prior year taxes," or taxes delinquent for a year or more. *See, e.g., id.* at 420-23 (Deposition Exhibit of Treasurer's records showing "Last Year Tax" and penalties and "Prior Year Tax" and penalties for the property). The Treasurer instructed Consultant to collect only on prior year taxes. Marsha DeMure, an employee of the Treasurer's office, testified at a deposition that the County assessed a penalty on every tax that was not paid on its due date. However, Treasurer's office practice was that "[e]ven though they had a penalty, they would not be considered delinquent taxes." *Id.* at 98. Consultant "was not able to handle that because that's present year" and the Treasurer did not "consider the present year as delinquent taxes for collection . . . ." *Id.* In other words, "the present year is not given to [Consultant] to collect on. . . . [It] cannot collect on those 'cause that's the year we're in. [What it is] able to collect on are what we say delinquent[,]" which are more than one year past due. *Id.* at 101; *see also id.* at 220 (DeMure testifying that "[j]ust because you're in the year that the 2001-2002 tax was due and it has a penalty on it, it is delinquent, but it's not delinquent for who was commissioned to collect these taxes. They were not considered delinquent for them to collect on."). Clara Castro, an employee of Consultant, testified similarly at her deposition:

> A: [The Treasurer's Office] supplied us with a cutoff date. We could only collect from one date to this date. . . .

> Q: So how did you learn about this cutoff date?
> A: From Marcia [sic] Demure.
> * * *
> Q. Okay. And would it be fair to say that was your working
> definition of a delinquent tax, was the prior year's taxes?
> A. Right.
> * * *
> A: We weren't allowed to collect [last year taxes].

*Id.* at 199, 203-04.

[4]  To initiate the collection process, Consultant sent a collection letter to taxpayers with delinquent prior year taxes. *See id.* at 190 (Castro, testifying that after she received a disc from the County, she would print out the "sheets that showed prior year taxes" and do research on those amounts before sending out collection letters). Consultant was not entitled to a commission on paid taxes unless a collection letter had first been sent. *See id.* at 196 (from Castro's deposition: "Q. And then those would be the monies based on the prior year taxes that [Consultant] would be paid his commission? A: Yes."). Every few months, Consultant would compare the letters it sent to the County's tax payment records and submit a claim for commissions. After the claim was submitted, Castro and DeMure met and "went through each and every one of those parcels so that we agreed on the amounts that [Consultant] was collecting." *Id.* at 463. Castro testified regarding Consultant's commissions:

> Q: What was your understanding as to how [Consultant] was being
> paid on these taxes that he was collecting?
> A: Well, the only thing that I know is that when I generate the report
> [that was going to be submitted to the Treasurer for payment], he just
> said, "Make sure that everything is prior year taxes."

*Id.* at 193.

[5]     Consultant filed its complaint against the County for breach of contract in 2008 alleging it was owed over $200,000 in unpaid commissions. The County filed an answer meeting the substantive allegations of the Complaint but asserting no affirmative defenses. In a pre-trial order entered June 12, 2012, the trial court summarized the parties' contentions as follows:

> D. *Plaintiffs [sic] Contentions:*
>
> . . . [Consultant contends that], in violation of the express terms of the contracts, [the County] verbally and unilaterally changed the types of delinquent taxes upon which [Consultant] was entitled to receive commissions, and applied these changes in an inconsistent manner to the detriment of [Consultant]. As a result, [Consultant] contends that in excess of $1,000,000.00 in commissions are owed . . . .
>
> E. *Defendants' Contentions*
>
> . . . [The County] contends that the term "delinquent taxes" had a very limited applicability pursuant to the course of conduct by the parties who all knew and understood how the contract was supposed to operate. [Consultant is] attempting to obtain unjust enrichment by receiving monies for taxes that they knew they were not entitled to collect, and conducted no activities in the actual collection process.

*Id.* at 707-10.

[6]     Consultant filed a motion for partial summary judgment in December 2012 seeking a determination as a matter of law

> that the contracts at issue in this matter are not vague, but their meaning can be determined from an examination of the contract language, that, [sic] parol or extrinsic evidence may not be used to add restrictions to the contracts' language governing payment of commissions, and that the evidence at trial be limited to a determination of what taxes were collected, and what commissions are due.

*Id.* at 77. The County filed a response and cross-motion for partial summary judgment "as the evidence shows that there is no genuine issue as to any material fact and that [the County is] entitled to partial summary judgment as a matter of law on all claims by [Consultant] seeking to recover for 'last years taxes'." *Id.* at 149.

[7] The trial court held a hearing on the cross-motions for partial summary judgment in June 2013. Counsel for Consultant described the issue before the court as "whether [Consultant] was entitled to receive a commission on all of the delinquent taxes that it recovered or just a portion of the delinquent taxes. And really the key question in this case is the definition of delinquent." Transcript at 4. Consultant argued:

> [O]nce a tax was more than one day past due, it was assigned a delinquent penalty. So there's really no question here as to what a delinquent tax is. . . . What does it mean to be delinquent? It means it didn't get paid on the day it was due.
> * * *
> [L]ast year's taxes were . . . a year past due. The prior year's taxes were two years past due. So they were all delinquent.
> * * *
> We'd ask the Court to enter partial summary judgment defining the term "delinquent," and that's all we're asking for.

*Id.* at 8-13. The County argued:

> [T]he issue here is not what the word "delinquent" means. There is no dispute about what a delinquent tax is or what process may be provided. The question is what process provides for when a delinquent tax becomes a tax collection case? And that's the language of the contract that [Consultant] asked this Court to ignore.

> There is no provision in any of the agreements that have been designated to the Court which in any way say that [Consultant] is entitled to recover for every delinquent real estate property tax.
>
> What it says is that 100 percent of real estate collection cases will be assigned to [Consultant]. When a case – a delinquent tax becomes a collection case is not defined in the contract. And when it will be assigned to [Consultant] is not defined in the contract. And that is where the instruction clause comes in.
> * * *
> [I]t's very important to note in this case that throughout the years that these contracts were in force, [Consultant] expressly understood that it was only collecting on these prior year taxes. In fact, their testimony is that they took no steps to, and never sought to collect any of the last year taxes.

*Id.* at 19-22. On June 18, 2013, the trial court entered an order granting Consultant's motion for partial summary judgment "as it relates to the definition of 'delinquent'" and denying the County's motion. *Id.* at 19-20. At a hearing on August 30, 2013, the parties requested clarification of the court's order for purposes of going forward. The trial court stated, "in the ruling on the 18th, as I understood 'delinquency,' that basically dealt with everything except the amounts." *Id.* at 320.

[8] On September 20, 2013, the County filed a Motion for Leave to Amend its answer to assert the affirmative defenses of estoppel, waiver, accord and satisfaction, and laches. Consultant objected to the motion for leave to amend on grounds of undue delay and prejudice. In short order, Consultant also filed a motion for summary judgment, alleging it was entitled to judgment as a matter of law in its favor because:

> 1. The parties entered into contracts regarding services provided by [Consultant] for [the County] whereby [Consultant] would be paid

commissions.

2. [The County has] breached said contracts.

3. [The County has] alleged that it did not breach said contracts but this court has effectively ruled otherwise.

4. [The County has] failed to produce any evidence supporting [its] denial of [Consultant's] claims and should be prohibited from now adding to or changing to [sic] the body of evidence as discovery is now closed.

5. . . . [A]s a result of [the County's] breach, [Consultant] is owed $1,076,896.92, plus prejudgment interest and costs.

*Id.* at 326-27. The County filed a response to the Motion for Summary Judgment and also filed a Motion to Strike portions of an affidavit and accompanying exhibits Consultant designated in support of its motion and request for damages.

[9] The trial court held a hearing on the County's Motion for Leave to Amend its answer, Consultant's Motion for Summary Judgment, and the County's motion to strike Consultant's affidavit. At the conclusion of the hearing, the trial court ruled from the bench that the County's motion for leave to amend its answer was denied, the County's motion to strike the affidavit was denied, and Consultant's motion for summary judgment was granted. In an order memorializing this ruling, the trial court entered final judgment against the County and for Consultant "in the amount of $1,076,896.92, together with pre-judgment interest in the amount of $393,000.00, together with its costs herein." *Id.* at 22. The County now appeals.

# Discussion and Decision

## I. Summary Judgment Standard of Review

[10] We review a summary judgment order de novo. *Neu v. Gibson,* 928 N.E.2d 556, 559 (Ind. 2010). A summary judgment order will be affirmed when there is no genuine issue of material fact and the moving party is entitled to summary judgment as a matter of law. *Id.* at 559-60; Ind. Trial Rule 56(C). The party appealing the trial court's grant of summary judgment has the burden of persuading the court that the grant of summary judgment was erroneous. *Diversified Invs., LLC v. U.S. Bank, NA,* 838 N.E.2d 536, 539 (Ind. Ct. App. 2005), *trans. denied.* The fact that the parties made cross-motions for summary judgment does not alter our standard of review; we will consider each motion separately to determine if the moving party was entitled to summary judgment as a matter of law. *Id.*

## II. Construction of the Collection Contracts

[11] The County contends the trial court erred in granting Consultant's motion for partial summary judgment and in denying its own motion for partial summary judgment regarding the interpretation of the collection contracts.

[12] "Summary judgment is especially appropriate in the context of contract interpretation because the construction of a written contract is a question of law." *TW Gen. Contracting Servs., Inc. v. First Farmers Bank & Trust*, 904 N.E.2d 1285, 1287-88 (Ind. Ct. App. 2009). And because the construction of a written

contract is a question of law, we review the trial court's judgment de novo. *Jenkins v. S. Bend Cmty. Sch. Corp.*, 982 N.E.2d 343, 347 (Ind. Ct. App. 2013), *trans. denied*. When a trial court has entered summary judgment in a contract dispute, it has implicitly determined either that the contract is not ambiguous as a matter of law and resolution requires only applying the terms of the contract or that any ambiguity may be resolved without the aid of factual determinations. *Id.* Here, the trial court made no specific finding regarding ambiguity, but the parties agree that the contract is unambiguous. *See* Brief of the Appellants at 22; Appellee's Response Brief at 27-28.

[13] "The ultimate goal of any contract interpretation is to determine the intent of the parties at the time that they made the agreement." *Citimortgage, Inc. v. Barabas*, 975 N.E.2d 805, 813 (Ind. 2012). Where the terms of a contract are clear and unambiguous, we determine the parties' intent from the four corners of the document. *Univ. of S. Ind. Found. v. Baker*, 843 N.E.2d 528, 532 (Ind. 2006). We begin by reading the plain language of the contract in context, "construing it so as to render each word, phrase, and term meaningful, unambiguous, and harmonious with the whole" when possible. *Citimortgage, Inc.*, 975 N.E.2d at 813. We should make every attempt to construe the language of the contract "so as not to render any words, phrases, or terms ineffective or meaningless." *Fischer v. Heymann*, 943 N.E.2d 896, 900 (Ind. Ct. App. 2011), *trans. denied*. If necessary, the text of a disputed provision may be understood by referring to other provisions within the four corners of the

document. *Claire's Boutiques, Inc. v. Brownsburg Station Partners LLC*, 997 N.E.2d 1093, 1098 (Ind. Ct. App. 2013).

[14] The specific question presented by the cross motions for summary judgment was what Consultant was hired to collect pursuant to the contract provision that Consultant was to "[c]ollect the delinquent monies." *See*, *e.g.*, Appellants' App. at 26 (Section 2.E. of January 19, 2000 contract). Consultant took the position that it was to collect *all* delinquent taxes and was entitled to commissions on the total amount, whereas the County took the position that Consultant was only to collect the past year delinquent taxes as directed by the Treasurer and was only entitled to commissions on that amount even if additional delinquent taxes were paid.

[15] The collection contracts do not define the scope of "delinquent monies" Consultant was hired to collect, and in fact, Section 2.E. of the contract is the only time the term "delinquent" is used. However, by the contracts' express terms, the Consultant was assigned all of the County's "Real Property Tax Collection Cases" and was to receive instruction from the Treasurer as to how to carry out its responsibilities under the contracts. Reading the collection contracts as Consultant urges focuses on the collection clause at the expense of the assignment and instruction clauses. Moreover, it misreads the collection clause as charging Consultant with collecting "delinquent taxes." *Id.* All the clauses are given meaning when the contracts as a whole are construed to mean that Consultant is to collect "the delinquent monies" associated with the real property tax collection cases assigned to it at the Treasurer's instruction and

that Consultant earns commissions on those amounts. That the contracts require Consultant to be assigned one-hundred percent of the real property tax collection cases means only that no tax collection cases will be assigned to any other entity for collection, not that Consultant will be assigned all delinquent tax accounts. In other words, the contracts allow the Treasurer to decide which cases are tax collection cases, assign those to Consultant and instruct Consultant to carry out its collection responsibilities with respect to those cases. The contracts then require Consultant to attempt to collect the delinquent monies from those collection cases and file a claim for its commissions when those delinquent monies are paid to the County.

[16] Although we may not look to extrinsic evidence to add to, vary, or explain the parties' intent with regard to an unambiguous contract, *Baker*, 843 N.E.2d at 532, we do note that the evidence designated in support of these cross-motions supports this interpretation of the collection contracts. County employee DeMure testified at her deposition that Consultant was not to collect on every past-due tax but only those specified by the Treasurer. And Castro, Consultant's employee, gave testimony at her deposition consistent with DeMure's, stating that Consultant was told by the County to collect only on prior year taxes and consistent with that instruction, it sent collection letters only on prior year taxes and submitted claims for commissions only on prior year taxes that were collected. The evidence is undisputed that in discharging its responsibilities under the contracts, Consultant was collecting only prior year taxes for the County. Although our resolution of this issue means we need not

address the merits of the final judgment in Consultant's favor, we also note that even if Consultant was correct that the terms of the contracts meant it *could* collect on every real property tax that was at least one day past due, it did not take the required steps to do so. Again, the undisputed evidence at this stage of the proceedings was that Consultant only sent collection letters on prior year taxes and acknowledged that it was only entitled to commissions on taxes collected after a collection letter was sent.

[17] The trial court erred as a matter of law in determining that the collection contracts meant Consultant was entitled to collect all delinquent taxes and therefore erred in granting partial summary judgment to Consultant and denying summary judgment to the County on this issue. We reverse the trial court's June 18, 2013 order granting partial summary judgment to Consultant, and remand with instructions for the trial court to enter partial summary judgment for the County on the issue of the interpretation of the collection contracts and to conduct further proceedings on Consultant's complaint regarding whether Consultant is owed any unpaid commissions on prior year taxes collected and if so, the amount of those unpaid commissions.

Reversed and remanded.

Baker, J., and Kirsch, J., concur.