TW GENERAL CONTRACTING SERVICES, INC., Harland A. Wendorf, Delores J. Wendorf, Jack L. Taylor, and Carolyn Taylor, Appellants–Defendants,

v.

FIRST FARMERS BANK & TRUST, Appellee–Plaintiff.

No. 80A04–0901–CV–5.

Court of Appeals of Indiana.

April 30, 2009.

Rehearing Denied June 12, 2009.

Derick W. Steele, Mark A. McCann, McCann Peelle, Kokomo, IN, Attorneys for Appellants.

Jason R. Burke, David M. Bullington, Hopper Blackwell, P.C., Indianapolis, IN, Attorneys for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

Summary judgment was granted in favor of First Farmers Bank & Trust ("the Lender") and against Jack Taylor, Carolyn Taylor, Harland A. Wendorf, Delores J. Wendorf (collectively, "the Guarantors"), and TW General Contracting Services, Inc. ("TW" or "Borrower"). On appeal, the Guarantors offer a variety of reasons why their personal guaranties should not apply to certain notes. We affirm.

### Facts and Procedural History

On May 11, 2005, TW delivered to the Lender two notes: (A) loan number 40459349, with a principal amount of $110,000, and security interest in 401 Southwood Drive, Tipton, Indiana; and (B) loan number 40459380, with a principal amount of $130,000, and a security interest in 343 Southwood Drive, Tipton, Indiana. App. at 78, 109 (hereafter, "Note A" and "Note B," respectively).[1] Neither Note A nor Note B mentioned any guaranties. Yet, on that same day, two identical guaranties (hereafter, "the Guaranties") were offered to the Lender. One Guaranty was signed by the Taylors, and the other Guaranty was signed by the Wendorfs. *Id.* at 147–50.

TW renewed Note B on June 13, 2006 ("Note C"), June 1, 2007 ("Note D"), and September 21, 2007 ("Note E"). Each renewal note reiterated these particulars: loan number 40459380, principal amount of $130,000, and security interest in 343 Southwood Drive, Tipton, Indiana. *Id.* at 111, 114, 142. In addition to Note E, TW delivered two other notes to the Lender in 2007. One, dated March 6, 2007, had a principal amount of $20,003, was to be used for commercial operating expenses, and listed a security interest in "all accounts, equipment, instruments, documents, general intangibles, & investment property." *Id.* at 144 (hereafter, "Note F"). The other, dated June 1, 2007, had a principal amount of $341,000, was for commercial real estate refinance, and listed as security "bare lots on Southwood Drive," and "sec. agr. dtd. 03/06/07 on all accounts, inventory, equipment, instruments, documents, general intangibles, & investment property." *Id.* at 146 (hereafter, "Note G").

On February 25, 2008, the Lender filed a complaint against TW, the Guarantors, and the Tipton County Treasurer. *Id.* at 131–41. Alleging that TW had defaulted on Notes E, F, and G, the Lender requested judgment and foreclosure. *Id.* On April 18, 2008, the Guarantors and TW filed an answer. On May 31, 2008, the Lender filed a motion for summary judgment accompanied by affidavits and documents. The following month, the Guarantors and TW filed a cross-motion for summary judgment, a response to the Lender's mo-

---

1. According to the language of the Notes, the purpose of both loans was "commercial; construct spec home." App. at 78, 109.

tion, and supporting affidavits and documents. The Lender filed a response and additional documents.

On June 13, 2008, the property at 343 Southwood Drive, Tipton, Indiana was sold. *Id.* at 20. That same day, the Lender received from TW $145,000, which was applied toward portions due on Notes E and F. *Id.* at 47–48. On August 28, 2008, the court held a hearing regarding the motions for summary judgment. On September 16, 2008, the court entered an order granting the Lender a $387,594.73 judgment, plus various costs, fees, and expenses, and foreclosing certain mortgage liens. *Id.* at 1–6.

### Discussion and Decision

■ The Guarantors contend that the trial court erred in finding that Notes E, F, and G were secured by the Guaranties. They stress that any ambiguity should be construed against the Lender. They point out that Notes E, F, and G do not reference the Guaranties. In addition, the Guarantors assert that the question of whether the execution of Notes E, F, and G materially altered the Guaranties is in dispute. Specifically, they argue that the "material alterations as a result of Notes" E, F, and G were not within their contemplation when they executed the Guaranties. *See* Appellants' Br. at 4, 11, 12. They rely upon Jack Taylor's affidavit in which he stated:

4. I did not intend to personally guarantee [Notes E, F, and G]. These monies were debts incurred by [TW] and were unrelated to the obligations incurred in 2005 upon signing the [Guaranties].

5. I informed [the Lender] that [Notes E, F, and G] were for a project independent of any for which previous loans had been sought and that I would not personally guarantee the 2007 loans.

6. I did not intend or contemplate the [Guaranties] signed in 2005 for [Notes A and B] to be applicable to [Notes E, F, and G]. The loans of 2005 had been satisfied and the account had been closed; it was my understanding that personally guaranteeing further loans would require the signing of a new guaranty applicable to such monies.

7. [Notes E, F, and G] were not within the scope of what was contemplated when the [Guaranties] were executed. I never consented to guaranteeing [Notes E, F, and G] and was never given any consideration for doing so.

App. at 97. Even ignoring the Lender's representative's statements to the contrary,[2] we reach the same conclusion as the trial court.

When reviewing a motion for summary judgment, we stand in the shoes of the trial court and apply the same standard that the trial court applied, without giving any deference to the trial court's ultimate decision. *Indiana Ins. Co. v. Allis*, 628 N.E.2d 1251, 1252 (Ind.Ct.App.1994), *trans. denied.* "Summary judgment is warranted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Ackles v. Hartford Underwriters Ins. Corp.*, 699 N.E.2d 740, 742 (Ind.Ct.App.1998) (citing Ind. Trial Rule 56(C)), *trans. denied.* When making our decision, we consider only those matters that have been designated by the parties to the trial court for consideration. *Id.* Summary judgment is especially appropri-

---

2. Thomas Dolezal, a commercial loan officer for the Lender, stated, via affidavit, that he was responsible for the loan relationship between TW and the Lender from 2005 through early January 2008, and that none of the Guarantors terminated (either orally or in writing) their Guaranties during that time. App. at 45. None of the Guarantors claim to have revoked the Guaranties in writing.

ate in the context of contract interpretation because the construction of a written contract is a question of law. *Colonial Penn Ins. Co. v. Guzorek,* 690 N.E.2d 664, 667 (Ind.1997).

 A guaranty is a conditional promise to answer for a debt or default of another person. *See Keesling v. T.E.K. Partners, LLC,* 861 N.E.2d 1246, 1251 (Ind.Ct.App.2007), *appeal after remand,* 881 N.E.2d 1025 (Ind.Ct.App.2008). That is, the guarantor promises to pay only if the debtor/borrower fails to pay. *Id.* The interpretation of a guaranty agreement is governed by the same rules applicable to other contracts. *Kruse v. Nat'l Bank of Indianapolis,* 815 N.E.2d 137, 144 (Ind.Ct. App.2004).

> In construing a guaranty, this court must give effect to the intentions of the parties, which are to be ascertained from the language of the contract in light of the surrounding circumstances. *Generally, the nature and extent of a guarantor's liability depends upon the terms of the contract,* and a guarantor cannot be made liable beyond the terms of the guaranty. Nevertheless, the terms of a guaranty should neither be so narrowly interpreted as to frustrate the obvious intent of the parties, nor so loosely interpreted as to relieve the guarantor of a liability fairly within their terms. Additionally, writings executed simultaneously and related to the same transaction will be construed together in determining the intent underlying the contracts. In other words, the guaranty and any other written agreements it incorporates must be evaluated in conjunction with one another in order to establish the parties' intentions.

*Bruno v. Wells Fargo Bank, N.A.,* 850 N.E.2d 940, 945–46 (Ind.Ct.App.2006) (citations omitted) (emphasis added).

We excerpt the relevant portions of the Guaranties below:

> [T]o induce [the Lender], at its option, at any time or from time to time to make loans or extend other accommodations to or for the account of [TW], or to engage in any other transactions with [TW], the [Guarantors] hereby *absolutely and unconditionally guarantees to the Lender the full and prompt payment when due,* whether at maturity or earlier by reason of acceleration nor otherwise, of the debts, liabilities and *obligations described as follows:*
>
> A. If this ___ is checked, the Undersigned guarantees to Lender the payment and performance of the debt, liability or obligation of Borrower to Lender evidenced by or arising out of the following: _____ and any extensions, renewals or replacements thereof (hereinafter referred to as the "Indebtedness").
>
> B. *If this X̲ is checked, the Undersigned guarantees to Lender, the payment and performance of each and every debt, liability and obligation of every type and description which Borrower may now or any time hereafter owe to Lender (whether such debt, liability or obligation now exists or is hereafter created or incurred, and whether it is or may be direct or indirect, due or to become due, absolute or contingent, primary or secondary, liquidated or unliquidated, or joint, several, or joint and several; all such debts, liabilities and obligations being hereinafter collectively referred to as the "Indebtedness").* Without limitation, this guaranty includes the following described debt(s): _____.
>
> The Undersigned further acknowledges and agrees with Lender that:
>
> 1. *No act or thing need occur to establish the liability of the Under-*

*signed hereunder, and no act or thing, except full payment and discharge of all indebtedness, shall in any way exonerate the Undersigned* or modify, reduce, limit or release the liability of the Undersigned hereunder.

2. This is an *absolute, unconditional and continuing guaranty of payment of the Indebtedness and shall continue to be in force and be binding upon the Undersigned, whether or not all Indebtedness is paid in full, until this guaranty is revoked by written notice actually received by the Lender, and such revocation shall not be effective as to Indebtedness existing or committed for at the time of actual receipt of such notice by the Lender, or as to any renewals, extensions and refinancing thereof.* If there be more than one Undersigned, such revocation shall be effective only as to the one so revoking. . . . .

. . . .

4. *The liability of the Undersigned hereunder shall be limited to a principal amount of $ UNLIMITED (if unlimited or if no amount is stated, the Undersigned shall be liable for all indebtedness, without any limitation as to amount), plus accrued interest thereon and all attorneys' fees, collection costs and enforcement expenses referable thereto. Indebtedness may be created and continued in any amount, whether or not in excess of such principal amount, without affecting or impairing the liability of the Undersigned hereunder.* The Lender may apply any sums received by or available to Lender on account of the Indebtedness from Borrower or any other person (except the Undersigned), from their properties, out of any collateral security or from any other source to payment of the excess. Such application of receipts shall not reduce, affect or impair the liability of the Undersigned hereunder. If the lia-

bility of the Undersigned is limited to a stated amount pursuant to this paragraph 4, any payment made by the Undersigned under this guaranty shall be effective to reduce or discharge such liability only if accompanied by a written transmittal document, received by the Lender, advising the Lender that such payment is made under this guaranty for such purpose. . . .

. . . .

6. Whether or not any existing relationship between the Undersigned and Borrower has been changed or ended and whether or not this guaranty has been revoked, *Lender may, but shall not be obligated to enter into transactions resulting in the creation or continuance of Indebtedness, without any consent or approval by the Undersigned and without any notice to the Undersigned* . . . .

. . . .

13. This guaranty shall be enforceable against each person signing this guaranty, even if only one person signs and regardless of any failure of other persons to sign this guaranty. *If there be more than one signer, all agreements and promises herein shall be construed to be, and are hereby declared to be, joint and several in each and every particular and shall be fully binding upon and enforceable against either, any or all the Undersigned.* This guaranty shall be effective upon delivery to Lender, without further act, condition or acceptance by Lender, shall be binding upon the Undersigned and the heirs, representatives, successors and assigns of the Undersigned and shall inure to the benefit of Lender and its participants, successors and assigns. Any invalidity or unenforceability of any provision or application of this guaranty shall not affect other lawful provisions and

application hereof, and to this end the provisions of this guaranty are declared to be severable. Except as authorized by the terms herein, *this guaranty may not be waived, modified, amended, terminated, released or otherwise changed except by a writing signed by the Undersigned and Lender.* This guaranty shall be governed by the laws of the State in which it is executed.

App. at 147–50 (emphases added).

■ The Guarantors are correct that ambiguities are to be construed against the party who employed the language and prepared the contract. *See Goeke v. Merchs. Nat'l Bank & Trust Co. of Indianapolis,* 467 N.E.2d 760, 769 (Ind.Ct.App. 1984), *trans. denied.* However, the terms in these Guaranties are not vague. Rather, as the highlighted provisions show *supra,* the Taylors and Wendorfs, as Guarantors, entered into unmistakable, very expansive guaranties to "induce" the Lender to make loans to TW, the S–Corporation in which they are sole shareholders. *See id.* at 47, 147.

As for the contention that Notes E, F, and G do not reference the Guaranties and therefore the Guaranties are inapplicable to those obligations, we disagree. Neither Note A nor Note B mentions the Guaranties, yet the Guarantors do not question the applicability of the Guaranties to Notes A and B. We also point out that Note G ($341,000) was signed by Harland Wendorf, President of TW, and Jack Taylor, Secretary–Treasurer of TW, and that Notes E and F were signed by Harland Wendorf, President of TW. As such, the additional obligations to TW, and in turn to the Guarantors, could not have come as a complete surprise to all the Guarantors. More importantly, pursuant to the clear, extremely global language of the Guaranties, these additional obligations could hardly be characterized as material altera-

tions but rather as a logical continuation of the mutually beneficial lender-borrower-guarantor arrangement.

Again, per the Guaranties, the Guarantors offered their absolute and unconditional Guaranties to the Lender to "induce" it to make loans to TW "at any time." The Guarantors were not guaranteeing only certain liabilities of TW, but "each and every debt, liability and obligation of every type and description" that TW made or "hereafter created." The Guarantors required no "act or thing" to establish the liability, and only "full payment and discharge of all indebtedness" would in any way exonerate the Guarantors. The Guaranties reiterated that they were "absolute, unconditional and continuing" and would "continue to be in force" and binding "whether or not all Indebtedness is paid in full" until "revoked by written notice actually received" by the Lender. Moreover, a written revocation by one Guarantor would not let any other Guarantors off the hook. The liability was described as "UNLIMITED," meaning the Guarantors would be "liable for all indebtedness, without any limitation as to amount." Further, the "Indebtedness" could be "created and continued in any amount, whether or not in excess of such principal amount, without affecting or impairing the liability of" the Guarantors. Further, the Lender could "enter into transactions resulting in the creation or continuance of Indebtedness, without any consent," of, approval by, or notice to the Guarantors. Finally, the Guaranties reiterated that they could not be terminated "except by a writing signed by" the Guarantors "and Lender." There was no particular end date for the Guaranties.

In sum, the Guarantors signed the Guaranties. The plain language of the Guaranties made the Guarantors responsible for unlimited, ongoing liabilities of TW. None

of the Guarantors provided written revocation of their Guaranties. Therefore, when TW defaulted, the Guarantors should have expected that they would need to fulfill their promises under the Guaranties.[3] Accordingly, summary judgment was properly granted to the Lender.

Affirmed.

BRADFORD, J., and BROWN, J., concur.

---

**3.** Given the clear, all-encompassing language of the Guaranties and the facts of the present case, we find inapposite the case of *S–Mart, Inc. v. Sweetwater Coffee Co.,* 744 N.E.2d 580 (Ind.Ct.App.2001) (holding that guarantors will be relieved of obligations if the underlying obligation is materially altered without the consent of the guarantor or the change to the underlying obligation was not within the contemplation of the parties when the guaranty was executed).