# FOR PUBLICATION



**FILED**
May 09 2014, 6:26 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**KAREN T. MOSES**
**KEVIN J. MITCHELL**
Faegre Baker Daniels LLP
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**JEFFREY P. SMITH**
**DAVID K. HAWK**
**MICHAEL D. HAWK**
Hawk Haynie Kammeyer & Chickedantz
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CARROLL CREEK DEVELOPMENT COMPANY, INC. | ) | |
| | ) | |
| Appellant/Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 02A03-1307-PL-282 |
| | ) | |
| TOWN OF HUNTERTOWN, INDIANA, | ) | |
| | ) | |
| Appellee/Defendant. | ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Stanley A. Levine, Judge
Cause No. 02D01-1010-PL-337

**May 9, 2014**

**OPINION – FOR PUBLICATION**

**PYLE, Judge**

Carroll Creek Development Company, Inc. ("Carroll Creek") appeals the trial court's order granting partial summary judgment to the Town of Huntertown, Indiana ("Huntertown").

We reverse.

## ISSUE

Whether the trial court erred by granting partial summary judgment to Huntertown on one part of Carroll Creek's breach of contract claim.

## FACTS

Huntertown is a municipal corporation located in Allen County, Indiana. Carroll Creek is an Indiana corporation engaged in the business of real estate development.

On October 2, 2000, Carroll Creek and Huntertown entered into an Agreement for Water Main Extension and Interconnection ("Water Agreement"), wherein Carroll Creek agreed to construct and pay for the cost of constructing a water main that would be "connected to [Huntertown's] water service facility" and would "serve not only real estate in which [Carroll Creek] ha[d] an interest, but also other real estate[.]" (App. 87).[1] The Water Agreement provided that the estimated cost of the water main was $617,198.00. It also provided that Carroll Creek could recoup up to $464,309.00 of its construction costs via a water connection charge from certain owners of real estate who connected to the water main.

---

[1] The parties also entered into an Agreement for Sewer Extension and Interconnection ("Sewer Agreement") on that same day.

2

In regard to the areas to be served by the water main and the people who would be subject to payment of the connection charge, the Water Agreement provided:

### 3. Area of Developer [Carroll Creek]

3.1 The Water Main, when constructed and accepted by [Huntertown], will serve the real estate of [Carroll Creek]; all as reflected in Exhibit "B" attached hereto.[2] [Carroll Creek], and those under contract with [Carroll Creek], will pay for the cost of construction of lateral lines within area described on Exhibit "B".

3.2 Once any improvement or facility on the real estate described in Exhibit "B" is connected to the Water Main, said improvement or facility cannot be withdrawn from the Water Main without the written consent of [Huntertown].

### 4. Charge Against Excess Area

4.1 The Water Main, when constructed and accepted by [Huntertown], will also serve additional real estate in the excess area: see Exhibit "C" attached hereto.[3] In the event any present or future owners of real estate within the excess areas shall, at any time within fifteen (15) years after the date of this Agreement, desire to connect into the Water Main, whether by direct tap or through the extension or connection of lateral lines to service the real estate situated in the excess area or adjacent to the excess area,[4] to the extent permitted by law, [Huntertown] shall require that such owner pay an "area connection charge" to [Carroll Creek] and further pay [Huntertown] the standard tap-in, inspection and administrative fees.

4.2 [Huntertown] may refuse to approve an excess area connection if the connection would use any part of the water service

---

[2] Exhibit B consists of three separate metes and bounds legal descriptions for various sections of land in Allen County.

[3] Exhibit C does not contain metes and bounds descriptions; instead, it consists of one page generally listing sections of land in Allen County.

[4] The copy of the Water Agreement contained in the record on appeal contains markings on some of the words in Section 4.1, such as underlining and circling of words. One of the markings seems to be obscuring a comma. We have included this comma because both parties included it in their summary judgment motions when they quoted Section 4.1 of the Water Agreement. We note, however, that Carroll Creek has omitted the comma when it quoted Section 4.1 in its Appellant's Brief.

capacity reserved by [Huntertown] for [Carroll Creek's] Area or if the owner in the excess area refuses to:

a)   Enter into an agreement with [Huntertown] for water main extension and interconnection;

b)   Waive remonstrance to annexation; and

c)   Submit and have approved a plan for development.

4.3   The excess area connection charge payable to [Carroll Creek] shall be according to the following formula:

a)   in the event that the excess area has minimal or no linear footage adjacent to the Water Main, then the excess area charge for residential use shall be $503.00 per acre of land to be serviced by the area connected to the Water Main.  All other connections shall pay a per acre charge in accordance with the Residential Equivalent Connection Fee, as published by the State of Indiana from time to time; and

b)   if the excess area has frontage adjacent to the Water Main as shown in Exhibit A, the connection charge shall be at $35.50 per linear foot based on the total adjacent footage as well as the charge per acre set forth in Section 4.3(a); and

c)   simple interest at a rate of 8% per annum calculated from the contract effective date of April 30, 2000 to the date the tap is made to the Water Main.

The connection charge shall be paid to [Carroll Creek] at the time the connection is made to Water Main.  The total excess area connection charge fees paid to [Carroll Creek] cannot exceed $464,309.00 plus interest, as referenced in this agreement.

4.4   [Carroll Creek] waives any claim or right of compensation arising from [Huntertown's] erroneous calculations of the interest portion of the excess area connection charge.

(App. 90-91; Appellee's Addendum 4-5).[5]

On October 1, 2010, just shy of ten years after the parties entered into the Water Agreement, Carroll Creek filed a complaint against Huntertown. Carroll Creek alleged a breach of contract claim in regard to the Water Agreement and an alternative claim of unjust enrichment.[6] Additionally, Carroll Creek sought an accounting. In regard to the breach of contract claim, Carroll Creek alleged that Huntertown had failed to comply with its obligations under the Water Agreement by failing to "collect the fees and costs required by the Water Agreement and fail[ing] to pay fees owed to Carroll Creek." (App. 31). In other words, Carroll Creek alleged that it was entitled to recover money from Huntertown for the area connection charges that Huntertown should have assessed to certain owners of real estate that had connected to the water main. In its complaint, Carroll Creek did not specify which owners of real estate should have been subjected to the area connection charge. Instead, Carroll Creek sought an accounting from Huntertown of all owners of real estate that were allowed to connect to the water main, as well as a list of the amount of fees and assessments charged to those land owners. During the course of discovery, Carroll Creek specified that Huntertown owed it money for the

---

[5] Aside from Carroll Creek's Addendum, it also tendered an Appellee's Appendix; however, our Clerk's office did not file it and marked it as received because Carroll Creek's certificate of service was not dated and did not indicate that the appendix had been served.

[6] Carroll Creek also alleged that Huntertown had breached the Sewer Agreement. However, that part of Carroll Creek's breach of contract claim is not at issue in this appeal.

owners of real estate who had connected to the water main such as the Ravenswood subdivision[7] and "whatever subdivision's [sic] on the Ruth Nobis farm[.]" (App. 108).

On January 8, 2013, Huntertown filed a first motion for partial summary judgment, in which it asked the trial court to interpret Section 4.1 of the Water Agreement.[8] In this partial summary judgment motion, Huntertown argued that the owners of real estate located outside of the contractually defined "excess area" who connected to the water main were not subject to the area connection charge. As part of its summary judgment motion, Huntertown submitted designated evidence to show that the tracts of real estate in Sections I and II of Ravenswood and in the Nobis Farm deed were not included in the "excess area" as defined in the Water Agreement. Huntertown argued that Carroll Creek was not entitled to area connection charges from the owners of real estate in these areas because the Water Agreement provided that Carroll Creek was entitled to area connection charges from owners of real estate located only in the excess area and not in an area adjacent to the excess area. Huntertown asserted that Section 4.1's clause "whether by direct tap or through the extension or connection of lateral lines to service the real estate situated in the excess area or adjacent to the excess area" should be interpreted to mean that owners of real estate in the excess area would be subject to an area connection charge whether they connected to the water main directly or whether they connected to the water main indirectly via a lateral line that served real estate

_____

[7] Ravenswood Section I was developed by Springmill Woods Development, and Ravenswood Section II was developed by PT Development Corporation.

[8] Huntertown also filed a second motion for partial summary judgment on June 4, 2013. This second motion is not at issue in this appeal.

adjacent to the excess area. Huntertown asked the trial court to grant it partial summary judgment on the general issue of whether Carroll Creek could seek payment for area connection charges for water main connections by owners of real estate located outside of the "excess area" and on the specific issue of whether Carroll Creek could seek payment for area connection charges for water main connections by owners of real estate located in Ravenswood.

Thereafter, Carroll Creek filed a cross-motion for summary judgment. Carroll Creek agreed that resolution of summary judgment was based on an interpretation of Section 4.1 of the Water Agreement. Carroll Creek argued that the "unambiguous language of the Water Agreement require[d] charges to be paid for any property owner within the excess area connecting to the Water Main to serve property in or adjacent to the excess area." (App. 137). Thus, Carroll Creek's interpretation of Section 4.1 was that the owners of real estate in the excess area who connected to the water main would be subject to the area connection charge when they used their water main connection to service real estate that was in either the excess area or area adjacent to the excess area. Carroll Creek argued that Huntertown was not entitled to summary judgment with respect to Ravenswood because Huntertown had "fail[ed] to provide any evidence showing that Ravenswood property owners [had] never owned property in the excess area." (App. 138).

In February 2013, the trial court granted leave to P.T. Development Corporation, to file an *amicus curiae* brief in support of Huntertown's first partial summary judgment

motion. Thereafter, Springmill Woods Development Company, LLC, joined P.T. Development's *amicus* brief.

On May 1, 2013, the trial court held a summary judgment hearing. During the hearing, Huntertown argued that Section 4.1 specifically identified the property owners who were subject to the area connection charge as those owners of real estate within the "excess area" and contended that the owners of real estate in areas adjacent to the excess area were not required to pay a connection charge. Huntertown argued that the parties did not intend to require the owners in adjacent areas to pay the area connection charge because they did not include a specific legal description of the adjacent area as they had done for Carroll Creek's area and the excess area. Huntertown also argued that the language in Section 4.1 should be interpreted when considering the remainder of the language in the Water Agreement, which referred only to the excess area.

Carroll Creek argued that its position was that the area connection charge should be assessed against owners of real estate located adjacent to the excess area if the owners also owned real estate within the excess area. In other words, Carroll Creek argued that Huntertown should assess an area connection charge against owners of real estate in adjacent areas only if the owners also owned real estate in the excess area and connected to the water main to service land adjacent to the excess area. When the trial court asked how that position applied to the facts of this case and how many people were required to pay the area connection charge, Carroll Creek replied that it had "no idea." (Tr. 19).

On June 10, 2013, the trial court issued an order granting Huntertown's motion for partial summary judgment and denying Carroll Creek's cross-motion. Specifically, the trial court's order provided, in relevant part:

2.      Consistent with the title of Section 4 of the Water Agreement, "Charge Against Excess Area," Section 4.1 notes "The Water Main, when constructed and accepted by [Huntertown], *will also serve additional real estate in the excess area*. See Exhibit C attached hereto;["] and then talks about "In the event any *present or future owners of real estate within the excess areas* desire to connect into the water main . . . ." (emphasis added).

3.      Each party has advanced its own interpretation of the language of Section 4.1.

4.      The drafters of Section 4.1 spoke of the charges to owners of real estate ["]in the excess areas." (emphasis added).

5.      Section 4.1 states: "In the event any present or future *owners of real estate within the excess areas* shall desire to connect into the water main . . . whether by direct tap or through extension or connection of lateral lines to service the real estate *in the excess area* or adjacent to the excess area. (emphasis added).

6.      The Court agrees with Huntertown that the "whether by" clause was intended to clarify that excess area owners will be subject to area connection charges even if they do not connect to the water main directly.

7.      The last sentence of Section 4.1 states: "Town shall require that such owner pay an "an area connection charge" to Developer and further pay the Town the standard tap-in, inspection and administrative fees." "Developer" refers to Carroll Creek Developer Company, Inc. and the term "such owner" clearly refers back to "present or future owners of real estate within the excess area" at the beginning of such section.

8.      There is no express intent in Section 4.1 to make the connection charge apply to owners of real estate adjacent to the excess area. The absence of a legal description for the "adjacent" real estate supports that conclusion.

9

9. The Court finds from a reading of Section 4 in the context of the entire Water Agreement that the parties' intent expressed in that section was to limit area connection charges to the excess area property only.

10. Ravenswood is located outside the excess area.

11. The above analysis comports with Carroll Creek's desire that the plain language of the Water Agreement should be applied.

12. To the extent, however, that the difference of interpretation of Section 4.1 by the parties may constitute an ambiguity, such ambiguity is construed against the Carroll Creek Development Company, Inc., whose Attorney, Timothy Claxton drafted the Water Agreement.

(App. 27-28). Thereafter, the trial court entered final judgment under Indiana Trial Rule 54(B) on the issue in Huntertown's first partial summary judgment motion. Carroll Creek now appeals.

## DECISION

Carroll Creek argues that the trial court erred by granting partial summary judgment to Huntertown and incorrectly interpreted Section 4.1 of the Water Agreement. Specifically, Carroll Creek argues that the trial court "erred in finding that Section 4.1 of the Water Agreement did not apply to any land 'adjacent to the excess area.'" (Carroll Creek's Br. 4).

When reviewing a trial court's order granting summary judgment, we apply the same standard as that used in the trial court. *Kopczynski v. Barger*, 887 N.E.2d 928, 930 (Ind. 2008). Summary judgment is appropriate only where the designated evidence shows "that there is no genuine issue as to any material fact and that the moving party is

10

entitled to judgment as a matter of law." Ind. Trial Rule 56(C). Our standard of review is not altered by the fact that the parties made cross-motions for summary judgment. *Ind. Farmers Mut. Ins. Grp. v. Blaskie*, 727 N.E.2d 13, 15 (Ind. Ct. App. 2000). Instead, we consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Id.*

Where a trial court enters conclusions of law in granting a motion for summary judgment, as the trial court did in this case, the entry of specific conclusions does not alter the nature of our review. *Rice v. Strunk*, 670 N.E.2d 1280, 1283 (Ind. 1996). We are not bound by the trial court's specific conclusions of law. *Id.* They merely aid our review by providing us with a statement of reasons for the trial court's actions. *Id.*

The issue in this partial summary judgment is contract interpretation, specifically the meaning of Section 4.1 of the Water Agreement. "Summary judgment is especially appropriate in the context of contract interpretation because the construction of a written contract is a question of law." *TW Gen. Contracting Servs., Inc. v. First Farmers Bank & Trust*, 904 N.E.2d 1285, 1287–88 (Ind. Ct. App. 2009) (citing *Colonial Penn Ins. Co v. Guzorek*, 690 N.E.2d 664, 667 (Ind. 1997)), *reh'g denied*. "The ultimate goal of any contract interpretation is to determine the intent of the parties when they made the agreement." *Citimortgage, Inc. v. Barabas*, 975 N.E.2d 805, 813 (Ind. 2012), *reh'g denied*. To do so, "we begin with the plain language of the contract, reading it in context and, whenever possible, construing it so as to render each word, phrase, and term meaningful, unambiguous, and harmonious with the whole." *Id.* A court should construe

11

the language of a contract so as not to render any words, phrases, or terms ineffective or meaningless. *Hammerstone v. Ind. Ins. Co.*, 986 N.E.2d 841, 846 (Ind. Ct. App. 2013).

Here, the trial court found, and the parties agree, that the language of the Water Agreement was unambiguous. When the language of a contract is unambiguous, we may not look to extrinsic evidence to add to, vary, or explain the instrument but must determine the parties' intent from the four corners of the instrument. *Univ. of S. Ind. Found. v. Baker*, 843 N.E.2d 528, 532 (Ind. 2006). "[C]onstruction of the terms of a written contract is a pure question of law for the court, reviewed de novo." *Harrison v. Thomas*, 761 N.E.2d 816, 818 (Ind. 2002). "We will reverse a summary judgment based on the interpretation of a contract if the trial court misapplies the law." *Bhd. Mut. Ins. Co. v. Michiana Contracting, Inc.*, 971 N.E.2d 127, 131 (Ind. Ct. App. 2012), *reh'g denied*, *trans. denied*.

It is undisputed that Carroll Creek is entitled, pursuant to the Water Agreement, to an area connection charge from certain owners of real estate who have connected to the water main within fifteen years of the Water Agreement. The parties, however, dispute exactly which land owners are subject to the area connection charge under the Water Agreement. Section 4.1 of the Water Agreement, which discusses who is subject to payment of the area connection charge, provides:

> 4.1 The Water Main, when constructed and accepted by [Huntertown], will also serve additional real estate in the excess area: see Exhibit "C" attached hereto. In the event any present or future owners of real estate within the excess areas shall, at any time within fifteen (15) years after the date of this Agreement, desire to connect into the Water Main, *whether by direct tap or through the extension or connection of lateral lines to service the real estate situated in the excess area or*

12

*adjacent to the excess area*, to the extent permitted by law, [Huntertown] shall require that such owner pay an "area connection charge" to [Carroll Creek] and further pay [Huntertown] the standard tap-in, inspection and administrative fees.

(App. 90; Appellee's Addendum 4) (emphasis added).

The parties do not dispute that owners of real estate in the excess area are subject to the area connection charge. The parties also do not dispute that owners of real estate located *only* in an area adjacent to the excess area are not subject to the area connection charge. Instead, the meaning of the italicized portion of Section 4.1 above is disputed by the parties, who disagree about whether the owners of real estate in the excess area are subject to an area connection charge if they connect to the water main to service land adjacent to the excess area.

On summary judgment, Huntertown asserted that Section 4.1's "whether by" clause should be interpreted to mean that owners of real estate in the excess area would be subject to an area connection charge whether they connected to the water main directly or whether they connected to the water main indirectly via a lateral line that served real estate adjacent to the excess area. The trial court adopted Huntertown's argument and concluded that "the 'whether by' clause was intended to clarify that excess area owners will be subject to area connection charges even if they do not connect to the water main directly." (App. 27).

On appeal, Carroll Creek agrees with the trial court's interpretation that the "whether by" clause was intended to clarify that excess area owners would be subject to the area connection charge even if they did not directly connect to the water main.

13

However, Carroll Creek argues that the plain meaning of the language used in Section 4.1 of the Water Agreement reveals that the "intent was to require Huntertown to collect area connection charges from any present or future owner of real estate located within the excess area who connected in to the Water Main for the benefit of land in the excess area *or* adjacent to the excess area." (Carroll Creek's Br. 4) (emphasis added). Carroll Creek asserts that the language of Section 4.1 shows that there are two circumstances under which an owner would be subject to the area connection charge: (1) excess area landowners who connect to the water main, either directly or indirectly, to service property located in the excess area; and (2) excess area landowners who connect to the water main, either directly or indirectly, to service property located adjacent to the excess area. Carroll Creek argues that the trial court's interpretation of Section 4.1 renders the phrase "adjacent to the excess area" meaningless, and it contends that that language must be given effect.

In response, Huntertown contends that Section 4.1 "clearly and unequivocally" provides that Carroll Creek is entitled to an area connection charge from owners of real estate within the excess areas. Huntertown argues that

> [w]hile excess area owners who connect to the Water Main are required to pay the charge even if they connect to the Water Main indirectly by way of lateral lines *that serve* areas adjacent to the excess area, Section 4.1 does not contain language that requires owners of adjacent real estate to pay area connection charges.

(Huntertown's Br. 4) (emphasis added).

As we review the trial court's interpretation of the Water Agreement de novo, we conclude that the trial court erred as a matter of law in its interpretation of Section 4.1

14

regarding who would be subject to the area connection charge. The plain language of Section 4.1 unambiguously provides that "present or future owners of real estate within the excess areas [who]. . . desire to connect into the Water Main, whether by direct tap or through the extension or connection of lateral lines *to service* the real estate situated in the excess area *or* adjacent to the excess area" would be subjected to the area connection charge. (App. 90; Appellee's Addendum 4) (emphasis added). Thus, the area connection charge would be assessed against owners of real estate in the excess area if that owner connected, directly or indirectly, to the water main "to service" real estate adjacent to the excess area. The trial court's interpretation of the "whether by" clause changes the "*to service* the real estate situated in the excess area or adjacent to the excess area" language to "*that service* the real estate situated in the excess area or adjacent to the excess area[.]" In doing so, the trial court disregarded the plain language of the Water Agreement. However, we must look to the plain language of the agreement and cannot change or vary the language used. *See Citimortgage*, 975 N.E.2d at 813; *Univ. of S. Ind. Found.*, 843 N.E.2d at 532. *See also Singleton v. Fifth Third Bank*, 977 N.E.2d 958, 967 (Ind. Ct. App. 2012) ("The unambiguous language of a contract is conclusive and binding on the parties and the court, and the parties' intent is determined from the four corners of the document.").

We acknowledge that, outside of Section 4.1, the Water Agreement does not mention real estate situated adjacent to the excess area and that it refers only to excess area owners. The lack of further reference to the area adjacent to the excess area is of no moment because the plain language of the Water Agreement reveals that the parties did

15

not intend all adjacent owners of real estate to be subjected to the area connection charge. Instead, the plain language in Section 4.1 of the Water Agreement provides that owners of real estate in the excess area are subject to the area connection charge if they connect, directly or indirectly, to the water main "*to service* the real estate situated in the excess area *or* adjacent to the excess area[.]" (App. 90; Appellee's Addendum 4) (emphasis added). Thus, the language of Section 4.1, agreed upon by the parties, shows that the intent of the parties was that the area connection charge would be assessed against excess area owners in two specified situations.

Because the trial court erroneously interpreted the contract as a matter of law, we reverse the trial court's grant of Huntertown's partial summary judgment motion and denial of Carroll Creek's cross-motion for summary judgment and remand for further proceedings. *See, e.g.*, *Bhd. Mut. Ins. Co.*, 971 N.E.2d at 132-33 (holding that "we are not at liberty to rewrite [a] contract" and reversing a trial court's grant of summary judgment where the court erred in interpreting the contract). *See also Singleton*, 977 N.E.2d at 968 (explaining that "[t]his court cannot make a contract for the parties, nor are we at liberty to revise a contract, or supply omitted terms while professing to construe it.").

Reversed and remanded.[9]

MATHIAS, J., and BRADFORD, J., concur.

---

[9] Carroll Creek also argues that the trial court erred by alternatively concluding that any potential ambiguity in the Water Agreement would be construed against Carroll Creek. Given our holding in this case, we need not address this issue.