## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 31 2020, 9:40 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Richard B. Gonon
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Julie A. Camden
Camden & Meridew, P.C.
Fishers, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Charles J. Sauter,<br>*Appellant-Plaintiff,*<br><br>v.<br><br>Robert Brack,<br>*Appellee-Defendant.* | August 31, 2020<br><br>Court of Appeals Case No.<br>20A-MI-751<br><br>Appeal from the Marion Superior Court<br><br>The Honorable David J. Dreyer, Judge<br><br>Trial Court Cause No.<br>49D10-1907-MI-27247 |

**Bailey, Judge.**

# Case Summary

Charles J. Sauter ("Sauter") sued Robert Brack ("Brack"), alleging that Brack—as the guarantor of debt—was liable for unpaid sums. Sauter now appeals (1) the denial of his motion for summary judgment and (2) the grant of Brack's motion for summary judgment, claiming entitlement to a judgment in his favor.

We affirm.

# Facts and Procedural History

At the heart of this action is debt incurred by Telecom LLC ("Telecom").[1] The undisputed facts are that Telecom purchased assets from Midwest Telephone Co Inc ("Midwest"). As a part of that transaction, Telecom—through its managing member, Brack—executed a promissory note (the "Note") in the amount of $250,000 (the "Junior Debt") in May 2018. Under the Note, Telecom promised to pay Midwest quarterly installments beginning on March 31, 2019. The Note provides for an event of default "whenever any payment due . . . is not paid within fifteen (15) days following the due date of that payment," so long as Telecom receives notice and an opportunity to cure. App. Vol. 2 at 43. The Note also contains an acceleration clause, specifying that Telecom would pay the balance of the Junior Debt upon an event of default.

---

[1] Telecom does business as Priority Communications and is at times referred to as "Priority" in documents below. As this matter relates to the prioritization of payments, we use "Telecom" to avoid any confusion.

[4]     When the Note was executed, Brack separately signed a personal guaranty (the "Guaranty"), which specifies that Brack's obligations under the Guaranty follow any assignment of the Note. In the Guaranty, Brack promises that, "[i]n the event that [Telecom] fails at any time to pay any part or all of the Note balance guaranteed when due," he will "pay the unpaid balance of the Note, in the same manner as if it constituted" his "direct and primary obligation[.]" *Id.* at 48. The Guaranty also permits modifications to the terms of the Note, specifying that Midwest and Telecom may "[c]hange the terms of . . . any debts or liabilities of [Telecom] to [Midwest]" without notice to Brack. *Id.* at 49.

[5]     Prior to the Midwest–Telecom transaction, Telecom had lines of credit and a loan (the "Senior Debt") from Lake City Bank ("Lake"). Contemporaneously with the execution of the Note and Guaranty, the interested entities—Lake, Midwest, and Telecom—entered into an agreement concerning the Junior Debt and the Senior Debt (the "Subordination Agreement"). Section 2 and Section 4 of the Subordination Agreement address Telecom's payment obligations under the Note. Section 2 generally provides that, "[e]xcept as permitted in Section 4 below, the Junior Debt shall not be payable . . . unless and until the Senior Debt has been paid in full." *Id.* at 55. Section 4 specifies that, "[n]otwithstanding the provisions of Section 2 above, [Midwest] may receive the regularly scheduled quarterly payments of principal plus regular interest . . . **until** [Lake] provides written notice of [Telecom's] [d]efault" as to the Senior Debt. *Id.* (emphasis added). Section 4 further provides that, "[a]fter [Lake] has sent to [Midwest] a [n]otice of [d]efault, **no payments permitted under this Section 4 may be made**

**by [Telecom]** or received or recovered by [Midwest] or any other party . . . until (a) [Lake] has provided written notice that such payments may be made; or (b) [Telecom] has paid the Senior Debt in full." *Id.* (emphasis added).

[6] On May 9, 2019, Midwest assigned its rights under the Note to Sauter. A few weeks later, Lake sent Sauter a notice of default. There is no dispute that, as a result, Telecom "is prohibited from making payments to [Sauter] at this time, and has been since [Lake] issued the [n]otice of [d]efault." *Id.* at 63.

[7] In July 2019, Sauter filed the instant action against Brack.[2] Sauter alleged that Telecom defaulted on the Note by failing to make any installment payments and that Brack, as guarantor, was liable to Sauter for the balance of the Junior Debt. Sauter and Brack filed motions for summary judgment. Brack argued that—*inter alia*—"there was no payment due" after Lake issued the notice of default. *Id.* at 72. (emphasis removed). Following a hearing, the trial court resolved the pending motions in favor of Brack, granting summary judgment.

[8] Sauter now appeals.

# Discussion and Decision

[9] Pursuant to Trial Rule 56(C), summary judgment is proper "if the designated evidentiary matter shows that there is no genuine issue as to any material fact

---

[2] Sauter also sued Lake and Telecom, although those parties were eventually dismissed from the action.

and that the moving party is entitled to a judgment as a matter of law." We review *de novo* the trial court's ruling on a motion for summary judgment. *Perkins v. Mem'l Hosp. of S. Bend*, 141 N.E.3d 1231, 1234 (Ind. 2020).

[10] The dispositive issue in this case is whether contracts associated with the Junior Debt permit Sauter to recover on the claim against Brack. The facts bearing on this issue are not in dispute, and we therefore need only interpret and apply the pertinent contract provisions. As to those provisions, the meaning of a contract is a pure question of law. *Heraeus Med., LLC v. Zimmer, Inc.*, 135 N.E.3d 150, 152 (Ind. 2019). "Our goal in contract interpretation is 'to determine the intent of the parties at the time that they made the agreement.'" *Care Grp. Heart Hosp., LLC v. Sawyer*, 93 N.E.3d 745, 752 (Ind. 2018) (quoting *Citimortgage, Inc. v. Barabas*, 975 N.E.2d 805, 813 (Ind. 2012)). To the extent that the language of a contract is unambiguous, we give the language "its plain and ordinary meaning in view of the whole contract, without substitution or addition." *Id.*

[11] Here, the Note obligates Telecom to pay quarterly installments. Critically, Section 4 of the Subordination Agreement adds a condition to that obligation—*i.e.*, when Lake has issued a notice that Telecom is in default on the Senior Debt. At that point, installments are not payable "until (a) [Lake] has provided written notice that such payments may be made; or (b) [Telecom] has paid the Senior Debt in full." *Id.* at 55. Notably, the issuance of notice **broadly suspends Telecom's obligation to pay Sauter**—even suspending an obligation to make past-due payments: "After [Lake] has sent . . . a [n]otice of [d]efault, no payments permitted under this Section 4 may be made by [Telecom.]" *Id.*

[12]     Sauter disagrees that the Subordination Agreement changed the structure of Telecom's obligations under the Note. Sauter asserts that, under Indiana law, "a subordination agreement only arranges lien priorities between creditors of a single debtor" and "doesn't transmute a debtor's underlying debt obligations[.]" Reply Br. at 6. However, regardless of the scope of a typical subordination agreement, we must apply the specific terms contained in the instant agreement. This agreement modifies the payability of the Note, conditioning payability on whether Lake has issued a notice of default. *See* App. Vol. 2 at 55 (providing in Section 2 that, "[e]xcept as permitted in Section 4 below, the Junior Debt shall not be payable"). Moreover, it is not as though—as Sauter suggests—Lake has been improperly empowered to "unilaterally chang[e] payment due dates in a promissory note that neither [Brack] nor the bank [was a party to] and that neither [Brack] nor the bank has authority to amend." Reply Br. at 6. Rather, the suspension of the payment obligation arises through the plain terms of the Subordination Agreement—a trilateral bargain struck between Lake, the principal obligor, and the original payee of the Note. *Cf. State v. Int'l Bus. Machs. Corp.*, 51 N.E.3d 150, 160 (Ind. 2016) ("Indiana courts zealously defend the freedom to contract."). We therefore decline to adopt Sauter's proffered reading of the interplay between the Subordination Agreement and the Note.

[13]     Ultimately, there is no dispute that Lake issued a notice of default. As earlier discussed, that notice suspended Telecom's obligation to pay Sauter on the Note. Moreover, there is also no dispute that Telecom's obligation to pay has not been revived. Thus, Telecom's obligation to pay remains suspended.

[14] Despite the suspension of Telecom's obligation, Sauter seeks to recover from Brack through the Guaranty. Sauter argues that Brack's obligation to pay under the Guaranty is not affected by the Subordination Agreement, to which Brack is not a party. According to Sauter, Brack "receives no cover" from the Subordination Agreement. Br. of Appellant at 12. Sauter largely focuses on language in the Guaranty specifying that Brack "unconditionally and absolutely guarantees the full and prompt payment and performance when due of the unpaid balance of [the Note.]" App. Vol. 2 at 48. Sauter directs us to caselaw discussing the effect of an absolute or unconditional guaranty,[3] arguing that any condition to payment in the Subordination Agreement does not apply to Brack.

[15] A guaranty is "[a] promise to answer for the payment of some debt, or the performance of some duty, **in case of the failure of another who is liable in the first instance**." *Guaranty*, Black's Law Dictionary (11th ed. 2019) (emphasis added). We interpret a guaranty as we interpret any other contract; thus, "a guarantor cannot be made liable beyond the terms of the guaranty." *Broadbent v. Fifth Third Bank*, 59 N.E.3d 305, 311 (Ind. Ct. App. 2016) (quoting *TW Gen. Contracting Servs., Inc. v. First Farmers Bank & Tr.*, 904 N.E.2d 1285, 1288 (Ind. Ct. App. 2009), *reh'g denied*), *trans. denied*. Of course, "the terms of a guaranty should neither be so narrowly interpreted as to frustrate the obvious intent of the parties, nor so loosely interpreted as to relieve the guarantor of a

---

[3] In this context, "absolute" is synonymous with "unconditional." *See generally Guaranty*, Black's Law Dictionary (11th ed. 2019) (defining, *inter alia*, "absolute guaranty" and "conditional guaranty").

liability fairly within [the] terms." *Id.* (quoting *TW Gen. Contracting Servs., Inc.*, 904 N.E.2d at 1288). As to an absolute or unconditional guaranty, this type of guaranty imposes liability regardless of whether the obligee first attempted to collect from the principal obligor. *Kruse v. Nat'l Bank of Indianapolis*, 815 N.E.2d 137, 141 n.2 (Ind. Ct. App. 2004) ("An absolute guaranty, unlike a conditional one, casts no duty upon the creditor or holder of the obligation to attempt collection from the principal debtor before looking to the guarantor" (quoting *McEntire v. Ind Nat'l Bank, 471 N.E.2d 1216, 1225 (Ind. Ct. App. 1984), reh'g denied & trans. denied*)); *cf. Guaranty*, Black's Law Dictionary (11th ed. 2019) (defining "conditional guaranty" as a guaranty that "requires the performance of some condition by the creditor before the guarantor will become liable").

[16] Sauter selectively quotes from the Guaranty. The Guaranty is unconditional in the sense that Sauter may attempt to collect from Brack without first attempting to collect from Telecom. That much is plain from the terms of the Guaranty. *See* App. Vol. 2 at 48 ("Guarantor hereby both unconditionally and absolutely guarantees the full and prompt payment and performance when due of the unpaid balance of [the Note.]") & 51 ("This is a continuing guaranty of payment and performance, not a guaranty of collection"[4]). Yet, regardless of the exhaustion of remedies against Telecom, Brack's obligations still flow from

---

[4] A guaranty of collection is a conditional guaranty, in that it "is conditioned on the creditor's having first exhausted legal remedies against the principal debtor before suing the guarantor." *Guaranty*, Black's Law Dictionary (11th ed. 2019). In contrast, a guaranty of payment is one "**not** conditioned on the creditor's exhausting legal remedies against the principal debtor before suing the guarantor." *Id.* (emphasis added)).

Telecom's obligations. Indeed, the Guaranty specifies that Brack must "pay the unpaid balance of the Note . . . in the same manner as if it constituted [his] direct and primary obligation[.]" *Id.* at 48. The Guaranty also specifies that Brack "shall remain liable until all terms of the [o]bligations are fully performed by [Telecom.]" *Id.* at 49. By referring to Telecom's primary obligations, the Guaranty plainly secures the performance of those very obligations—no more, no less. Therefore, Brack's obligations track Telecom's obligations, *i.e.*, Brack is liable only if Telecom has a ripe financial obligation under the Note.

[17] Before Lake issued the notice of default, Telecom was obligated to make regular payments on the Note. However, the notice suspended Telecom's obligation to pay even past-due payments. Thus, regardless of the amount owed to Sauter, the amount is not due and payable at this time. That is, the amount is not "subject to immediate collection." *Due and Payable*, Black's Law Dictionary (11th ed. 2019) (defining "due and payable" as "owed and subject to immediate collection because a specified date has arrived or time has elapsed, or some other condition for collectibility has been met"). Because Telecom is not presently obligated to pay Sauter, Brack is not presently obligated to pay Sauter. Thus, the claim is not ripe because the debt is not due and payable. *See id.*[5]

[18] Sauter suggests that allowing Brack's obligations to track Telecom's obligations would "threaten the fundamental purpose" of a personal guaranty and "various

---

[5] We therefore find inapposite Sauter's reliance on *Hamilton v. Meiks*, 4 N.E.2d 536 (Ind. 1936). In that case, unlike in this case, the principal obligor failed to pay an amount that was due and payable. *See id.* at 611-12.

commercial transactions made possible by them." Reply Br. at 18. We disagree. The purpose of a guaranty is to ensure payment of due and payable amounts. *See, e.g.*, *Guaranty*, Black's Law Dictionary (11th ed. 2019) (stating that a guaranty is "[a] promise to answer for the payment of some debt, or the performance of some duty, **in case of the failure of another who is liable in the first instance**" (emphasis added)). Where, as here, an amount is not due and payable, we discern nothing unusual about an obligee's inability to collect.[6]

[19] For the foregoing reasons, we conclude that the trial court did not err by ruling in favor of Brack on the competing motions for summary judgment.[7]

[20] Affirmed.

Vaidik, J., and Baker, Sr. J., concur.

---

[6] It is also unsurprising that a transaction would be structured to prevent the managing member of the principal obligor from paying on the junior debt as a guarantor. Structuring the deal in this manner protects the senior creditor's ability to later obtain or enforce a meaningful personal guaranty from that same person.

[7] Having resolved the case on the grounds set forth above, we need not address the parties' other arguments concerning, *inter alia*, (1) whether Telecom actually defaulted as to the Note and (2) notice to Brack.